## SHARP v. CHEATHAM, *Appellant.*

1. **Party Wall**: CONTRACT: EQUITABLE EASEMENT.  Where owners of adjoining premises made an agreement under seal for themselves, but not acknowledged and recorded, whereby one was to build a party wall, and the other, when he should use it in the construction of his building, was to pay half the cost of such wall, the effect of such agreement was to create cross-easements as to each owner, and a purchaser of the estate with notice, would take it burdened with the liability to pay one-half the cost of the wall whenever he should avail himself of its benefits.

2. ——: ——: ——: NOTICE.  One purchasing under a quit-claim deed, would not, without actual notice, be bound by such agreement.

*Appeal from Johnson Circuit Court.*—HON. NOAH M. GIVAN, Judge.

REVERSED.

*O. L. Houts* for appellant.

(1) The contract sued on was a personal covenant; did not run with the land or create a privity of estate between the original parties or their grantees, the parties to this action.  Wash. on Real Prop. [3 Ed.] top pp. 261, 262, 263, side pages 15, 16, and cases cited; *Cole v. Hughes*, 54 N. Y. 444.  (2) The original parties to the contract sued on intended only to bind themselves and only employed terms to that end.  They did not bind their representatives and assigns, and the law will not thus contract for them.  *Wiggins Ferry Co. v. Ry. Co.*, 73 Mo. 389.  (3) But if the contract runs with the land, defendant is not bound thereby unless he had notice thereof.  *Houx v. Seat*, 26 Mo. 178; *Abraham v. Krantler*, 24 Mo. 69.  (4) Defendant had no actual notice of the contract.  His quit-claim deed vested title in him without constructive notice.  The instrument relied on

was neither recorded nor entitled to record, as it must have been to affect defendant's lot and him with con-structive notice. *Fox v. Hall*, 74 Mo. 315; *Boogher v. Neece*, 75 Mo. 383; *Willingham v. Hardin*, 75 Mo. 429.

*W. W. Wood* for respondent.

(1) A covenant of the kind in controversy in this action runs with the land, and is binding upon the grantee of the party using the wall. *Brown v. Pentz*, 1 Abb. [N. Y.] 227; *Burlock v. Peck*, 2 Duer, 90; *Savage v. Mason*, 3 Cush. 500; *Richardson v. Tobey*, 121 Mass. 457; *Branson v. Caffin*, 108 Mass. 175; s. c., 118 Mass. 156; *Roche v. Ullman*, 104 Ill. 11. And a covenant of this kind is binding upon the assigns of the covenantor without their being expressly named. 1 Wash. on Real Prop. [3 Ed.] p. 437, side p. 330. (2) But whether or not the covenant runs with the land, respondent's prop-· erty is subjected under the agreement to the burden of the use of the wall for the benefit of appellant's premises and she is equitably entitled to be compensated therefor. *Platt v. Eggleston*, 20 O. St. 414; *Keteltas v. Penfold*, 4 E. D. Smith, 133; *Standish v. Lawrence*, 111 Mass. 111; *Trustees v. Lynch*, 70 N. Y. 441; *Maine v. Cumston*, 98 Mass. 317; *Richardson v. Tobey*, 121 Mass. 451, 459; *Roche v. Ullman*, 104 Ill. 11; *Landers v. Martin*, 2 Lea [Tenn.] 213. (3) The appellant claims solely under a quit-claim deed, and he cannot avail himself of the de-fence that he is a *bona fide* purchaser without notice. The deed did not pass any more title than the grantor had, and only what the grantor could lawfully and equi-tably convey. And the title he acquired is subject to all equities. He was by the face and terms of the deed notified and put upon enquiry for all equities affecting the property conveyed. Washb. on Real Prop, vol. 3, p. 375; *May v. Leclerc*, 11 Wall. 232; *Ridgeway v. Holliday*, 59 Mo. 444; *Stoffel v. Schroeder*, 62 Mo. 150; The rule laid down in the case of *Fox v. Hall*, 74 Mo.

315, is not applicable to the facts of this case. Cheatham did not give full value for the property. Elliott's testimony proves clearly that he expressly refused to make a warranty deed, because he was not getting full value. (4) Upon another well settled principle of law, the question of notice must be decided in favor of respondent. When appellant purchased the lot he found plaintiff in possession of six inches of the same, and using it for the support of her wall, and was thereby put upon his enquiry as to the character of her possession and rights thereunder. *Vaughan v. Tracy*, 22 Mo. 415, 421; *Martin v. James*, 72 Mo. 23; *Hardy v. Summers*, 32 Am. Dec. 167; *Knox v. Thompson*, 13 Am. Dec. 246, and note; Wade on Notice, sec. 279.

SHERWOOD, J.—Plaintiff instituted this proceeding in equity on the following contract:

"Article of agreement, made and entered into this seventh day of July, 1868, by and between Roach & Stitt and Austin Elliott, all of the town of Warrensburg, county of Johnson and state of Missouri. Witnesseth: That the said Austin Elliott, party of the second part, hereby agrees that the said Roach & Stitt, party of the first part, shall place the walls of their building, now in process of erection, six [6] inches on the lot now owned by the party of the second part; and the said party of the second part further agrees that when he shall join said walls he will pay to the party of the first part, one-half the cost of so much of said walls as he may join to.

"In witness whereof, we have hereunto set our hands and affixed our ———, this day and date above named.

        "ROACH & STITT, [L. S.]
        "AUSTIN ELLIOTT. [L. S.]

"Attest: M. M. GLADDISH."

The substance of the petition is that Roach & Stitt and Elliott, the owners respectively of adjoining lots in,

Holden's second addition to the town of Warrensburg, made the agreement aforesaid ; that subsequently Roach & Stitt, in compliance with said agreement, proceeded to erect and did erect a wall along the line between the two lots, and six inches on the land of Elliott, for ninety feet in length, etc. ; that afterwards Elliott erected a building on his lot, sixty feet in length ; that Roach & Stitt afterwards conveyed their lot to plaintiff, in March, 1881 ; that Elliott in the next month thereafter, conveyed by quit-claim deed, his lot to defendant, who afterwards erected on it a brick extension of the building previously erected by Elliott, and joined and connected the same with the line and party wall theretofore erected by Roach & Stitt, using thereby said wall to the extent said building was joined thereto, some thirty feet in length and sixteen feet in height ; that defendant when he purchased his lot had notice of the agreement entered into as aforesaid by Elliott and by Roach & Stitt ; that the cost of the wall to which defendant joined his building was two hundred dollars ; that defendant was equitably bound to pay plaintiff one-half of that sum, but refuses to do so, and, therefore, plaintiff asks that defendant be decreed to pay plaintiff one-half the cost of said wall, etc.

The agreed statement of facts was filed, which, together with the deposition of Elliott, was all the evidence in the cause. The fact of notice to defendant of the agreement aforesaid, was not established ; the substance of the other allegation of the petition, was, however, made out. Whereupon the circuit court made a special finding, whereby it was held that defendant had no actual notice of the agreement, yet that having purchased under a quit-claim deed, had constructive notice of the agreement, and, therefore, rendered judgment against him, and decreed that the amount of such judgment should be a lien on his property described in the petition.

The only question presented then by the defendant's appeal is the correctness of the ruling just mentioned.

This question will be discussed from two points of view: (1) In respect of the general powers of a court of equity to enter such a decree as has been entered in the present instance. (2) Whether conceding the existence of such powers, it was proper to exercise them in the case at bar, owing to the fact, found by the trial court, that defendant had no actual notice of the agreement at the time he received his deed.

I.   Were this *an action at law* there would be little or no doubt that plaintiff could not successfully maintain her action.   An author of eminence touching this subject says: " With a very few exceptions, the uniform current of authorities, from the time of *Webb v. Russell*, 3 T. R. 393, to the present day, requires *a privity of estate* to give one man a right to sue another upon a covenant where there is no privity of contract between them; consequently that where one who makes a covenant with another in respect to land, neither parts with nor receives any title or interest in the land, at the same time with and as a part of making the covenant, it is at best a mere personal one, which neither binds his assignee, nor enures to the benefit of the assignee of the covenantee, so as to enable the latter to maintain an action in his own name for a breach thereof." 2 Wash. [4 Ed.] top p. 285.   And the learned author then quotes with approval, the remarks of Erle, J., in *Cole v. Hughes*, 54 N. Y. 444, where he says:   "There is a wide difference between the transfer of the burden of a covenant running with the land and the benefit of the covenant, or, in other words, of the liability to fulfill the covenant and the right to exact the fulfillment. The benefit will pass with the land to which it is incident; but the burden or liability will be confined to the original covenantor, unless the relation of privity of estate or tenure exists or is created between covenantor and covenantee at the time when the covenant is made."   As no such privity of estate or tenure existing between the contracting parties

when the agreement heretofore set forth was made, it is quite clear from the authorities cited, that plaintiffs' action, if one of law, must fail.

This, however, being a proceeding in equity, the rules prevailing in actions at law, as to the necessity of the covenant running with the land ; as to the necessity of there being a contemporaneous privity of tenure or estate, in order to make the covenant something more than a mere personal one, in order to fasten it upon the land mentioned in the covenant, does not prevail here, as in contemplation of a court of equity no such privity is essential, nor that the covenant should run with the land. In order to successfully invoke equitable interposition in cases of this sort, all that is necessary is a valid agreement or covenant, and notice thereof to the pur-. chaser. When these things are shown, a court of equity, disregarding the technical rules of law, and looking alone to the substance and justice of the agreement, such as the one now before us, will enforce it as well against the purchaser with notice as against the original party. Cases are quite frequent which illustrate and fortify this position. Some of them do so in direct terms of adjudication ; others of them by necessary analogy and irresistible inference.

Thus, in the early case of *Campbell v. Mesier*, 4 Johns. Ch. 334, two parties living in the city of New York, on adjacent lots and having on the common line of their buildings a ruinous party wall unfit to stand, and one of the persons thus situated being desirous of rebuilding, proposed to the other co-terminous proprietor to unite with him in rebuilding the party wall, but this request was refused. Whereupon, Campbell, the proposer, proceeded to tear down his own house as well as the party wall, and rebuilt both. Thereafter, Mesier, who had refused to assist in rebuilding the party wall, devised his property to his son, who thereafter sold the lot to Dunstan, and in the deed expressly conveyed to the.

latter the use of the party wall for building, etc., and covenanted to indemnify him for so using it. Dunstan then pulled his house down and erected a new one, and in so· doing made use of the new party wall; but refused to pay his proportionate share of that wall. Campbell then sued him in an ordinary action, but was non-suited on the ground that he had no remedy at law. On this, Campbell filed his bill against both Mesier and Dunstan, · praying that the defendants be decreed to come to a settlement with him touching the building of the party wall, and to contribute and pay one-half of the value thereof, etc. Upon this state of facts the prayer of the bill was granted, and a decree entered accordingly, Chancellor Kent remarking: "I have not found any adjudged case in point, but it appears to me, that this· case falls within the reason and equity of the doctrine of contribution which exists in the common law, and is bot-· tomed and fixed on general principles of justice. In Sir *William Harbert's case* [3 Co. 11] and in *Bro. Abr.*, tit. *Suite and Contribution*, many cases of contribution are put, and the doctrine rests on the principle, that where the parties stand *in equali jure*, the law requires equality, which is equity, and one of them shall not be obliged to bear the burden in ease of the rest. It is stated in F. N. B. 162*b*, that the writ of contribution lies where there are tenants in common, or who jointly hold a mill, *pro indivisa*, and take the profits equally, and the mill falls into decay, and one of them will not repair the mill. The form of a writ is given to compel the other to be contributory to the reparations. In *Sir William Harbert's case*, it was resolved, that ' when land was charged by any tie, the charge ought to be equal, and one should not bear all the burden ; and the law on this point was grounded in great equity.' * * * The doctrine of contribution is founded, not on contract, but on the principle that equality of burden as to a common right, is equity, and the solidity and necessity of this doctrine

were forcibly and learnedly illustrated by Lord Ch. Baron Eyre in the case of *Dering v. Earl of Winchelsea*, 1 Cox's Cases, 318. * * * The obligation arises not from agreement, but from the nature of the relation, or *quasi ex contractu;* and as far as courts of law have, in modern times, assumed jurisdiction upon this subject, it is, as Lord Eldon said [14 Ves. 164] upon the ground of an implied *assumpsit.* The decision at law, stated in the pleadings, may, therefore, have arisen from the difficulty of deducing a valid contract from the case; that difficulty does not exist in this court, because we do not look to a contract, but to the equity of the case as felt and recognized according to Lord Coke in every age, by the judges and sages of the law." And the cause was referred to a master to ascertain the cost of the wall. Afterwards, the cause coming on again before the chancellor, he ruled that the expense of rebuilding the wall was an *equitable charge on the wall*, and the owner, for the time being, exercising his right in the new wall, was equitably bound to contribute ratably to the expense of the necessary reparation. And Dunstan having purchased with actual notice of the charge or claim, was ordered to pay the moiety of the expense of rebuilding the wall.

In *Rindge v. Baker*, 57 N. Y. 209, two adjoining proprietors entered into a *parol* agreement to jointly build a party wall, one-half on the premises of each, and accordingly built a portion of the wall, but one of them refused to proceed; the other having planned his building in reliance on the contract being performed, was held not confined to his remedy for specific performance, but might go on and complete the wall, and in an equitable action recover of the other proprietor one-half of the expense. In *Huck v. Flentye*, 80 Ill. 258, two adjoining proprietors, without any express agreement as to who should pay for the party wall, agreed to rebuild together, and did so, and one of them having built the entire party

wall, was held entitled to recover, in an action of *assumpsit* one-half of the expense from the other proprietor, and this ruling was placed on the ground of contribution, and of an implied promise. In *Sanders v. Martin*, 2 Lea [Tenn.] 213, where one owner of a party wall made additions to it for his own convenience, and the co-owner afterwards used such additions when enlarging her own building, it was held on bill brought by the first party, that he could compel contribution from the other for one-half the expense of such additions. The case of *Platt v. Eggleston*, 20 Ohio St. 414, was one where W, the owner of a lot sold and conveyed one-half of it to P, agreeing at the same time, in a separate writing, not under seal, that P might erect one-half of the wall of his building on the part of the lot retained, and that W, when he should sell the residue of the lot, would require that the purchaser or his assigns, when they should use the party wall, pay one-half of the expense to P, or his assigns. P built on his lot, and after that conveyed it "with the appurtenances," etc., with full covenants of warranty to E. W, afterwards, conveyed by deed of *release* to C, the remainder of the lot, without requiring him or his assigns to pay for the moiety of the expense of the party wall, when he should build, nor is it stated that C was aware of the agreement previously made. C thereupon built on his portion of the lot thus purchased, and in building used the party wall, and was held in an equitable proceeding by Eggleston, that the effect of the agreement was to give to Platt and his assigns a right in equity to an easement for the support of one-half of the wall on the premises retained by W ; that it was immaterial that the agreement was not inserted in the deed to Platt, nor that it was not under seal, nor that it was not a covenant running with the land ; that as the first lot sold was liable to be subjected under the agreement to the burden of the use of the wall for the benefit of the adjoining premises, Eggleston, the then owner, was equi-

tably entitled to compensation for the one-half of such wall ; and that this right of compensation passed as an appurtenance by the deed from W to Platt, and from the latter to plaintiff in the same way.

A case, however, similar in all its essential incidents to the one at bar, is that of *Roche v. Ullman*, 104 Ill. 1, where it was ruled in a proceeding in equity that where owners of adjoining premises made an agreement under seal for themselves, heirs and assigns, whereby one is to build the party wall, and the other, when he uses it in the construction of his building, is to pay half of the cost of such wall ; that the effect of such agreement is to create *cross-easements* as to each owner, which bind all persons succeeding to the estates to which the easements are appurtenant, and a purchaser of the estate of the owner so contracting, would take it burdened with the liability to pay one-half the cost of the wall, whenever he availed himself of its benefits. The only difference, which can be suggested between the case just cited and the present one, is that the agreement in the latter does not contain the word "*assigns ;*" but this, as will be presently shown, is not material.

Other cases may be found which support the view already announced in the remarks heretofore made and, in the authorities already cited, that such agreements as those under discussion, are *equitable easements* or *servitudes*, constituting charges on the land, and capable of enforcement in equity, against the land itself, where the agreement or covenant is of an affirmative character, or of being enforced in other appropriate modes where the agreements are negative or restrictive in their nature. Thus, where adjoining owners of lands by mutual covenants imposed certain conditions on their respective lands as to the character of the buildings which should be erected on those lands, it was held that equity would enjoin the parties or those claiming under them with notice, from any violation of such covenants ; that such covenants con-

stituted reciprocal easements impressed upon the lands ; and that whether there was any privity of estate between the mutual covenantors and covenantees ; whether the covenant was one running with the land or a collateral covenant, or a covenant in gross, or whether an action at law could be sustained upon it, was not material as affect- ing the jurisdiction of a court of equity in affording re- lief upon a disturbance of the easements created by the original contracting parties. Allen, J., among other things, remarking : " The language of courts and of judges has been very uniform and very decided upon this subject, and all agree that whoever purchases lands upon which the owner has imposed an easement of any kind, or created a charge which could be enforced in equity against him, takes the title subject to all ease- ments, equities and charges however created of which he has notice." *Trustees v. Lynch*, 70 N. Y. 450, and cases cited. Lord Cottenham when speaking of such coven- ants, said in *Tulk v. Moxhay*, 2 Phil. [Eng. Ch. 774] : " If an equity is attached to property by the owner, no one pur- chasing with notice of that equity, can stand in a differ- ent situation from the party from whom he purchased."

The distinction between the binding obligation at law of covenants not running with the lands, and the equitable rights which equity enforces in such cases, is recognized by the author of the American note to *Spen- cer's case*, vol. 1, pt. 1, 1 Smith's Lead. Cas. [6 Am. Ed.] 167. He says, when speaking of such covenant : " But although the covenant when regarded *as a contract*, is binding only between the *original parties*, yet, in order to give effect to their intention, it may be construed by equity as creating an *incorporeal hereditament* (in the form of an easement) out of the unconveyed estate, and rendering it appurtenant to the estate conveyed ; and when this is the case, subsequent assignees will have the rights and be subject to the obligations which the title or liability to such easement creates." See also, treating of

the same subject, *Parker v. Nightingale*, 6 Allen, 341; *Whitney v. Ry.*, 11 Gray, 359; *Kirkpatrick v. Peshime*, 24 N. J. Eq. 206; *Burbank v. Pillsbury*, 48 N. H. 475; *Norfleet v. Cromwell*, 70 N. C. 634. And it is quite immaterial, so far as equitable interposition and relief are concerned, whether the covenant or agreement be *affirmative* or *restrictive* in its character. 3 Pomeroy's Eq. Jur. sec. 1295 and notes; 2 *Ib*. sec. 689 and cases cited. Frequent instances are given by the learned author just cited of the enforcement of both kinds of covenants, and he says: "I have, as it will be seen, continued to state the doctrine in its most general form as applying to affirmative as well as to restrictive covenants, and as rendering the owner liable to the affirmative duty of specifically performing the covenant, as well as to the negative remedy of restraint from violating it, notwithstanding the very recent decisions by the English Court of Appeals, holding that the doctrine applies only to *restrictive* covenants, and does not extend to those which stipulate for affirmative acts. In my opinion, the doctrine has been fully established, in its most general form, without such limitation, by the overwhelming weight of authority, English and American." *Ib*. sec. 1295. And there would seem to be but little of either justice or sound reason in the doctrine which enforces the equities arising from the agreement of parties to refrain from doing certain acts towards a certain subject-matter, and yet refuses to enforce a similar agreement by compelling the performance of acts embraced within its terms.

It has already been stated that it was immaterial that the agreement in question did not contain the word "*assigns*." This point has been so ruled in the case of *Wilson v. Hart*, 2 H. & M. 551 [Eng. V. Ch.], where the covenant was restrictive in its character, and bound the purchaser, *not naming assigns*, that no building erected or to be erected, should be used for certain purposes, and it was held that the *assignee* of such purchaser,

having notice of the covenant would be bound thereby in equity and required to perform it, notwithstanding it was also ruled that the covenant was a mere *personal* engagement, and did not run with the land. Applying the principle announced in that case to the present one, the lack of the word mentioned cannot affect the result. And aside from any precedent to that effect, if in consequence of the agreement of the original parties an equitable burden, servitude or easement was created on the land conveyed to defendant, he, if having notice thereof, was of necessity, and on the most familiar of all equitable principles, bound thereby. As is aptly said by Bigelow, J., in *Parker v. Nightingale, supra :* "A purchaser of land, with notice of a right or interest in it existing only by agreement with his vendor, is bound to do that which his grantor had agreed to perform, because it would be unconscientious and inequitable for him to violate or disregard the valid agreements of the vendor in regard to the estate of which he had notice when he became the purchaser."

II. Now, as to the question of notice to the defendant. He took under a quit-claim deed from his grantor ; this, according to a large number of authorities, both in this state and elsewhere, would constitute him a purchaser with notice. *Ridgeway v. Holliday*, 59 Mo. 444 ; *Stoffel v. Schroeder*, 62 Mo. 147 ; *Stivels v. Horne, Ib.* 473 ; *Mann v. Best, Ib.* 491 ; *Oliver v. Piatt,* 3 How. [U. S.] 333 ; *May v. Le Claire,* 11 Wall. 217 ; *Bragg v. Paulk*, 42 Me. 502 ; *Smith v. Dunton*, 42 Iowa, 48 ; *Watson v. Phelps*, 40 *Ib.* 482 ; *Springer v. Bartle*, 46 *Ib.* 688 ; *Thorp v. Coal Company*, 48 N. Y. 253 ; *Marshall v. Roberts*, 18 Minn. 405 ; *Rogers v. Burchard,* 34 Tex. 441. In addition to defendant being a purchaser under a quit-claim deed, it is to be noted that he did not give full value for the lot. Elliott says : "Told him I wouldn't make anything but a quit-claim deed *at that price.*" Moreover, the case of *Fox v. Hall*, 74 Mo. 315,

does not apply to the agreement in question, for the instrument which evidenced it was not in such shape as entitled it to registry, and, therefore, defendant, taking under a conveyance of the kind he did, will be presumed, under that ruling, to have notice of the agreement, although he would not have had notice had it assumed such shape as entitled it to be put to record. It must be confessed that the reasoning which leads to such incongruous results is not very well calculated to satisfy the judgment. It may be remarked, also, that Fox, the plaintiff in that case, would not have been within the protection of the registry act, *even had his deed been one with full covenants of warranty*, since, according to the case stated, he was not a purchaser for value. The ruling there made should, therefore, be regarded as *obiter*.

But whatever may be thought of its abstract correctness, it does not apply here for the reasons already given, and in consequence of this the defendant must be held as a purchaser with notice of the equitable easement or servitude created on the lot he bought, and that whenever he availed himself of the privileges of the party wall, by adjoining his building thereto, he did so only upon the equitable terms of sharing the burden while he shared the benefit.

Therefore, the judgment should, in my opinion, be affirmed. Norton, J., concurs in affirming the judgment in so far as the result. Henry, C. J., Ray and Black, JJ., concur as to the first paragraph of this opinion, but as to the second one they hold that the defendant was a purchaser without notice. This leads to a reversal of the judgment and the remanding of the cause.