C. C. BURR ET AL. V. M. F. LAMASTER.

[FILED NOVEMBER 5, 1890.]

1. **Party Walls:** INCUMBRANCES. Where a person purchases a vacant lot which supports the half of the wall of the building erected on the adjoining lot, and such purchaser is, by the terms of a previous wall agreement entered into by his grantor, obliged to pay a part of the costs of the wall in order to use it, such agreement and wall constitute an incumbrance.

2. **A covenant against incumbrances** covers incumbrances unknown to the purchaser, as well as those known.

ERROR to the district court for Lancaster county. Tried below before CHAPMAN, J.

*Pound & Burr*, for plaintiffs in error, cited: *Chapman v. Kimball*, 7 Neb., 399; *Post v. Campau*, 42 Mich., 90; *Fritz v. Pusey*, 31 Minn., 368; *Prescott v. Trueman*, 4 Mass., 630; *Mitchell v. Warner*, 5 Conn., 527; *Carter v. Denman*, 3 Zab. [N. J.] 273; *Bronson v. Coffin*, 108 Mass.,

Burr v. Lamaster.

175; *Cary v. Daniels*, 8 Met. [Mass.], 482; *Huyck v. Andrews*, 113 N. Y., 85; *Roche v. Ullmann*, 104 Ill., 1; *Sharp v. Cheatham*, 88 Mo., 498; *Richardson v. Tobey*, 121 Mass., 457; *Dowling v. Henning*, 20 Md., 179; *Eno v. Vecchio*, 4 Duer [N. Y.], 53; *Bloch v. Isham*, 28 Ind., 37; *Ingalls v. Plamondon*, 75 Ill., 123; *Platt v. Eggleston*, 20 O. St., 414; *Keteltas v. Penfield*, 4 E. D. Smith [N. Y.], 134; *Savage v. Mason*, 3 Cush. [Mass.], 500; *Andrea v. Haseltine*, 58 Wis., 395; *Haslett v. Sinclair*, 76 Ind., 488; *Maine v. Cumston*, 98 Mass., 317; *Brown v. McKee*, 57 N. Y., 684; *Spurr v. Andrew*, 6 Allen [Mass.], 420; *Lamb v. Danforth*, 59 Me., 322; *Russ v. Steele*, 40 Vt., 310; *Wilson v. Cochran*, 46 Pa. St., 233; *Bank v. Hill*, 48 Ind., 52; *Beach v. Miller*, 51 Ill., 206; *Kellogg v. Malin*, 50 Mo., 496; *Haynes v. Young*, 36 Me., 557; *Kellogg v. Ingersoll*, 2 Mass., 101; *Butler v. Gale*, 27 Vt., 739; *Hubbard v. Norton*, 10 Conn., 422; Rawle, Cov. for Title [5th Ed.], 79, 81–2; *Clark v. Conroe*, 38 Vt., 469; *Gerald v. Elley*, 45 Ia., 322; *Butt v. Riffe*, 78 Ky., 352; *McGowen v. Myers*, 60 Ia., 256; *Blake v. Everett*, 1 Allen [Mass.], 248; *Cathcart v. Bowman*, 5 Pa. St., 319; *Morgan v. Smith*, 11 Ill., 199; *Ginn v. Hancock*, 31 Me., 42; *Rosenberger v. Kellar*, 33 Gratt. [Va.], 489; *Mackey v. Harmon*, 34 Minn., 168; *Giles v. Dugro*, 1 Duer [N. Y.], 331; *Mohr v. Parmelee*, 43 N. Y., 320; 2 Washb., R. P. [4th Ed.], 300, 363; 3 Id., 468, 470, 474; *Mitchell v. Stanley*, 44 Conn., 312; *Roberts v. Levy*, 3 Abb. Pr., (N. S.) [N. Y.], 311; *Bertram v. Curtis*, 31 Ia., 46; *Cole v. Hughes*, 54 N. Y., 444; *Hendricks v. Starks*, 37 N. Y., 106.

*O. P. Mason, contra*, cited : Rawle, Covenants for Title, 79, 80; *Whitbeck v. Cook*, 15 Johns. [N .Y.], 483; *Vaughn v. Stuzaker*, 16 Ind., 340; *Goodtitle v. Aiker*, 1 Burr. [Eng.], 133; *Coretyou v. Van Brundt*, 2 Johns. [N. Y.], 357; *Lewis v. Jones*, 1 Pa., 336; *Peck v. Smith*, 1 Conn.,

44

10:3, 147 ; *Hendricks v. Stark,* 37 N. Y., 106 ; *Waterman v. Van Every,* 3 Alb. L. J., 304 ; *Ogden v. Jones,* 2 Bosw. [N. Y.], 685 ; *Ingalls v. Plamondon,* 75 Ill., 118 ; 2 Washb., R. P. [3d Ed.], 275 ; Bouvier's Dic., "Party Wall," and authorities cited ; *Walters v. Pfeil,* 1 Mood. & M. [Eng.], 362 ; 3 Kent's Com., 437 ; *Partridge v. Gilbert,* 15 N. Y., 601 ; *Andrae v. Haseltine,* 58 Wis., 395 ; *Sanders v. Martin,* 2 Lea [Tenn.], 213 ; *Brooks v. Curtis,* 50 N. Y., 639 ; *Mc-Gittigan v. Evans,* 8 Phila., 264.

NORVAL, J.

On the 8th day of May, 1886, the defendant, Milton F. Lamaster, was the owner of lots 7 and 8, in block 40, in the city of Lincoln, and E. W. Baldwin and G. S. Baldwin were the owners of lot 9, in said block. On said day the said Lamaster and the Baldwins entered into the following contract for a party wall between said lots 8 and 9 :

"Articles of agreement made and concluded this eighth day of May, 1886, by and between E. W. Baldwin and G. S. Baldwin, party of the first part, and Milton F. Lamaster, party of the second part, witnesseth :

"That whereas, said parties of the first part are the owners of lot 9, block 40, in the city of Lincoln, in the county of Lancaster, and state of Nebraska ; and whereas, said party of the second part, is the owner of lot 8, block 40, in the said city of Lincoln, which lot joins said lot 9, belonging to said first parties, on the west side ; and

" Whereas, said first parties contemplate building upon their said lot nine a three-story brick store building, and one wall of which would lie along the west of said lot, adjacent to said lot eight, belonging to the party of the second part:

" Now, therefore, it is hereby mutually covenanted and agreed by and between the parties hereunto, that said first

parties shall build said wall so that the center of the same shall be upon the dividing line between said lots eight and nine, in said block forty, in the city of Lincoln, Lancaster county, Nebraska, and that the same shall be and remain a party wall for the common use of the parties hereunto.

"And it is further agreed that said parties shall construct said wall in a good, durable, and sufficient manner, the wall of basement being one foot ten inches in thickness, with a footing of concrete one foot thick by three feet wide, and a footing of large stone upon this; that the wall of the first story shall be four bricks, or sixteen inches in thickness, and that the remainder of wall shall be three bricks, or thirteen inches in thickness; that said wall shall contain flues properly built and arranged for the accommodation and use of the party of the second part; that there shall be at the height of each story proper joist holes left in said wall and in the west side thereof, for the accommodation of the party of the second part, and that said holes shall be filled with brick set on end so they can be taken out when required, and that said holes shall be made directly opposite to the ends of the joists of said building to be erected by the parties of the first part.  It is also further agreed that in case said first parties do not build on the whole of said lot 9, and that their wall does not extend to the full depth of lot 9, and that their wall does not extend to the full depth of said lot, and if at any time either of the parties hereunto desires to extend said party wall, they shall be at liberty to do the same subject to all the terms and conditions of this contract as to thickness and character of wall, and as to the rights and privileges of both parties hereunto.

"It is also mutually agreed that when the party of the second part shall join to or make use of said party wall he shall pay to said first parties for the same a sum not exceeding the first cost thereof, or the portion thereof so used, to be determined at that time by two disinterested

persons or arbitrators, one to be chosen by the party of the first part and one by the party of the second part, and in case of disagreement these two arbitrators shall choose a third person as referee, and the decision of these three persons as to the value of said wall shall be final.

"And in case of the extension of said party wall by either of the parties hereunto, then the other party shall, upon his joining to or using said wall, pay to the party building the same one-half the value thereof, the same to be determined as hereinbefore provided.

"It is further agreed by and between the parties hereunto that the several covenants and agreements herein contained shall extend to and be binding upon their several heirs, executors, and administrators and assigns.

"In witness whereof, we have set our hands this seventh day of May, 1886.

"In presence of

"Party of the first part:

"G. S. BALDWIN.

"E. W. BALDWIN.

"Party of the second part:

"M. F. LAMASTER."

The above contract was duly acknowledged and on the 19th day of May, 1886, was recorded in the county clerk's office of Lancaster county. During the year 1886 the Baldwins erected a brick building on lot 9, and in pursuance of the above agreement constructed a party wall on the line between lots 8 and 9, one-half of the wall resting on each of said lots.

On February 19, 1887, Lamaster sold and conveyed to Carlos C. Burr and Lionel C. Burr said lots 7 and 8. The deed contains the following covenants:

"The said Milton F. Lamaster does hereby covenant with said Carlos C. Burr and Lionel C. Burr, and their heirs and assigns, that he is lawfully seized of said premises; that they are free from incumbrance; that he has good

right and lawful authority to sell the same; and said M. F. Lamaster does hereby covenant to warrant and defend the title to said premises against the lawful claims of all persons whomsoever."

Afterwards the Burrs erected a six-story stone building on the lots purchased by them, but did not use said party wall. The plaintiffs brought this suit for damages, claiming that the party wall agreement and the party wall constructed by the Baldwins constituted a breach of the covenants in the deed. The judgment of the district court was for the defendant.

The main question presented by the record is, whether the party wall agreement and the party wall erected in pursuance thereof constituted a breach of the covenants of the deed against incumbrances.

An incumbrance is defined to be any right to or interest in land which may subsist in third persons to the diminution of the value of the land and not inconsistent with the passing of the fee in it by the deed of conveyance. (1 Bouv. Law Dic., 784; 2 Greenleaf, Ev., sec. 242; *Fritz v. Pusey*, 31 Minn., 368; *Prescott v. Trueman*, 4 Mass., 630.)

By the contract entered into between Lamaster and the Baldwins the latter were authorized to construct one-half of the party wall on the vacant lot owned by Lamaster, and he covenanted for himself, his heirs and assigns, to pay the Baldwins the one-half of the cost of the wall whenever he should make use of the same. This agreement gave the Baldwins an interest in the nature of an easement in the Lamaster lot, and constituted an incumbrance. The obligation to pay a portion of the cost of the wall was not merely a personal covenant binding upon Lamaster, but was a burden which ran with the land and bound his grantees to pay for one-half of the wall if they used the same. It was a charge upon the lot conveyed to the Burrs, and until it was used by them the Baldwins had a right of property in the wall.

In *Savage v. Mason*, 3 Cush., 500, the action was brought for a breach of covenants against incumbrances. In an agreement of partition of real estate between the owners, it was stipulated that the center of the party walls of each brick or stone building might be placed upon the lines dividing the lots from a contiguous lot, and that the owner of such contiguous lot should pay for one-half of the wall so used by him, whenever he should make use of the same. A lot set off to Benjamin Joy, one of the parties to the agreement, was conveyed by his heirs to John F. Loring and Henry Arews, and subsequently it was by them conveyed to Ezekiel W. Pike, who erected his brick dwelling house on the lot, placing the center of one of the walls upon the line dividing his lot from the contiguous lot. Subsequently Pike conveyed his lot to Luther S. Cushing and wife, who in turn conveyed to the plaintiffs. The contiguous lot by Jonathan Mason was, upon his death, set off to the defendant, who erected thereon a brick dwelling, in which the party wall was used. The plaintiff sued upon the covenant for one-half of the value of the party wall. The court, in the opinion, says: "A covenant is said to run with the land when either the liability to perform it, or the right to take advantage of it, passes to the assignee of the land. The liability to perform, and the right to take advantage of, this covenant both pass to the heir or assignee of the land, to which the covenant is attached. This covenant can, by no means, be considered as merely personal or collateral, and detached from the land. There was a privity of estate between the covenanting parties in the land to which the covenant was annexed. The covenant is in terms between the parties and their respective heirs and assigns; it has direct and immediate reference to the land; it relates to the mode of occupying and enjoying the land; it is beneficial to the owner as owner, and to no other person; it is in truth inherent and attached to the land, and necessarily goes with the land

into the hands of the heir or assignee." Among the many decisions sustaining the same proposition, we cite *Roche v. Ullman,* 104 Ill., 1; *Sharp v. Cheatham,* 88 Mo., 498; *Richardson v. Tobey,* 121 Mass., 457; *Bronson v. Coffin et al.,* 108 Id., 175; *Platt v. Eggleston,* 20 O. St., 414.

In the case of *Sharp v. Cheatham, supra,* Roach & Stitt and Austin Elliott being the owners respectively of adjoining lots in the town of Warrensburg, Mo., on July 7, 1868, entered into a written agreement by which Roach & Stitt agreed to erect a party wall on the line between the two lots, and Elliott agreed that when he should use said wall he would pay to the other parties one-half of so much of the wall as he should join to. Subsequently Roach & Stitt erected a wall along the line between the lots and six inches on Elliott's lot for ninety feet in length. Afterwards Elliott erected a building on his lot, using the party wall. Subsequently Roach & Stitt conveyed their lot to one Sharp, and shortly thereafter Elliott conveyed his lot to Cheatham, who erected thereon a brick extension of the building previously erected by Elliott, and joined the same with the party wall, using thirty feet in length and sixteen feet in height. Suit was brought to recover from Cheatham the costs of one-half of the wall used by him. It was held that the effect of such an agreement was to create cross-easements as to each owner, and that the one who purchased the lot with notice would be bound by his grantor's agreement to pay one-half the cost of the party wall upon using it.

The question was again before the same court in March, 1886, in the case of *Keating v. Korfhage et al.,* reported in 4 Western Rep., 569. It was a suit to enforce the provisions of a party wall agreement, similar to the one in the case at bar. We quote from the syllabus of that case: "An agreement made between adjoining owners in relation to a party wall erected on the division line of their lots is bind-

ing on the parties and creates an equitable charge, easement, and servitude upon the lots built upon."

There are cases holding that a party wall agreement like the one before us is merely personal, binding alone upon the parties to it, and does not attach to the land, but the weight of the decisions in this country is to the effect that it attaches to and is a charge upon the land.

A case similar in its facts to the one at bar is *Mackey et al. v. Harmon et al.*, 34 Minn., 168. One Hurlburt and the defendant Harmon, owning adjoining lots in Minneapolis, entered into a written agreement that Hurlburt might erect a party wall on the dividing line between the lots, so that one-half of the wall should stand on each lot, and that Harmon should have the right to join to and use the wall by paying one-half of the value of so much thereof as he should use. The agreement was acknowledged and recorded. Hurlburt erected the party wall according to the agreement, and afterwards Harmon conveyed his lot to the plaintiff Mackey, by a deed containing covenants against incumbrances, and Mackey conveyed one-half the lot to his co-plaintiff Legg, which deed contained like covenants. The plaintiffs in order to use the wall, paid to Hurlburt $850, being one-half of the value of the wall used by them. Suit was brought against Harmon on his covenants against incumbrances. The trial court held that the party wall agreement did not constitute a legal incumbrance. The case was reversed by the supreme court. Berry, J., in delivering the opinion of the court, says: "The easement in the plaintiff's lands in favor of and appurtenant to Hurlburt's is a right or interest in a third person in the former to the diminution of its value, and therefore an incumbrance within the authoritative definition before given. The existence of the incumbrance does not depend upon the extent or amount of the diminution in value. If the right or interest of the third person is such that the owner of the servient estate has not

so complete and absolute an ownership and property in his land as he would have if the right or interest spoken of did not exist, his land is in law diminished in value and incumbered. It follows that in the case at bar the existence of the right in plaintiff's land conferred upon and as appurtenant to Hurlburt's land was an incumbrance, and that therefore the covenant against incumbrances in Harmon's deed to plaintiff Mackey is broken." ·

The supreme court of Iowa, in *Bertram v. Curtis*, 31 Ia., 46, held that where the owner of a vacant lot, on which rests one-half of a neighbor's wall, conveys the same with a covenant of warranty against incumbrances, the existence of such wall is not a breach of the covenant. This case is not an authority in point. An examination of the reported case shows that it is based upon a statute of that state which confers the right to one who is about to erect a building contiguous to the lot of another, to construct one-half of the wall on his neighbor's lot, and gives the latter the right to make use of the wall as a party wall by paying one-half of the expense of constructing the same. Under such a statute the existence of a party wall would not be an incumbrance. The covenant is presumed to have been made with reference to the provisions of the statute. As we have no law in this state regulating party walls, it is obvious that the decision in *Bertram v. Curtis*, is not applicable.

In *Mohr v. Parmelee*, 43 N. Y. Super. Ct., 320, it was held that a party wall resting upon the land of adjoining owners is not an incumbrance. In that case it appears that the party wall was constructed wholly on one of the two adjoining lots, with the right granted to the owner of the other contiguous lot to use the same as a party wall. It was held, both in the opinion and syllabus, that such right constituted an incumbrance upon the lot on which the wall stood. It is obvious that what is said by the court about a party wall constructed upon the lots of adjacent

owners not being an incumbrance, is mere *obiter dicta*, and was not pertinent to any question necessary to be decided in the proper determination of the case.

In *Hendricks v. Starks*, 37 N. Y., 106, it was held that "a party wall creating a community of interest between adjoining proprietors is in no just sense to be deemed a legal incumbrance." That was an action to enforce the specific performance of a contract for the sale of real estate. Stark refused to complete his purchase on the ground that two of the walls of the building on the premises were party walls, which supported the buildings on adjoining lots. These walls stood part on the premises purchased and part on the adjoining lots. It is doubtless true that a party wall between two buildings owned by different persons would not constitute a breach of a covenant against incumbrances, for the owners have a community of interest in the wall, each having the right to support his building by that part of the wall owned by the other. It is difficult to see how a purchaser of one of the buildings and the lot on which it stands could be damaged by the existence of the party wall, as the easement of support is mutual and reciprocal. But where one purchases a vacant lot which supports the half of the wall of the building erected on the adjoining lot, and such purchaser is, by the terms of a previous party wall agreement, obliged to pay part of the costs of the wall in order to use it, such agreement and wall is an incumbrance.

The plaintiffs offered to prove at the trial that they did not know that the wall rested upon any part of lot 8. This testimony was excluded, and we think properly so. Whether or not the plaintiffs had such knowledge is immaterial to their right of action. A covenant against incumbrances covers those unknown as well as those known at the time of the purchase. (*Barlow v. McKinley*, 24 Ia., 69; *McGowen v. Myers*, 60 Id., 256; *Bank v. Hill*, 48 Ind., 52; *Huyck v. Andrews*, 113 N. Y., 81; *Herrick v.*

*Moore,* 19 Me., 313 ; *Prichard v. Atkinson,* 3 N. H., 335 ; *Clark v. Estate of Conroe,* 38 Vt., 469 ; *Kellogg v. Maetin,* 50 Mo., 496 ; *Hubbard v. Norton,* 10 Conn., 422 ; *Parish v. Whitney,* 3 Gray, 516 ; *Long v. Moler,* 5 O. St., 271.) The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.