LOYAL MYSTIC LEGION ET AL. V. ARTHUR H. JONES.

FILED FEBRUARY 22, 1905. NO. 13, 727.

1. **Party Wall Agreement: RECORDING: NOTICE.** The proper registration of a party wall agreement is constructive notice to all purchasers of the real estate affected by the agreement, and such notice is as effectual and binding as actual notice.

2. ———: CONSTRUCTION. Party wall agreement construed, and *held*, that it was the intention of the parties that the privileges, duties and liabilities given and imposed by the contract should pass to all persons obtaining title to either of the lots upon which the wall stood by grant from the original parties. *Held*, further, that the agreement itself operates as an assignment to his grantee of the claim of the builder of the wall for compensation for its use as soon as that person was designated by his deed.

ERROR to the district court for Adams county: ED L. ADAMS, JUDGE. *Reversed and dismissed.*

*R. A. Batty*, for plaintiffs in error.

*J. B. Cessna, contra.*

LETTON, C.

This was an action brought by Arthur H. Jones, defendant in error, as plaintiff, against the Loyal Mystic Legion to recover for the use of a wall under a party wall agreement. In 1887 Charles L. Jones and Henry Shedd were the owners of lots 7, 8 and 9 in a certain block in Hastings, and A. S. Raymond was the owner of lot 10 in the same block. Jones and Shedd, being about to erect a brick building on lot 9, in June, 1887, entered into a written contract which recited that, whereas Jones and Shedd were about to erect a building of brick and stone upon lot 9, it is agreed that the wall may be set upon the line between lots 9 and 10, one-half upon the lot belonging to each party. Jones and Shedd agreed that the "said party of the second part, his heirs, executors, administrators or grantees" should have the privilege of using the wall as a party wall for any building "the said party of the second part or his grantees may erect." The contract also contained this provision: "Provided always, nevertheless and on this express condition, that the said party of the second part or his grantees, before proceeding to join any other buildings to the said party wall

and before making any use thereof or breaking into the same, should pay or secure to be paid to said parties of the first part or their grantees one-half of the actual cost of said party wall or so much thereof as shall be joined or used as aforesaid." The agreement was signed by the parties, acknowledged before a notary public and recorded in the miscellaneous records of Adams county on June 22, 1887. After this agreement was made, Jones conveyed to Shedd by quitclaim deed all his interest in lot 9. Shedd soon afterwards died, and lot 9 was sold at administrator's sale and bought by Rose E. Shedd, who became a party defendant to the action, claiming the money to be due her as grantee of lot 9. A. S. Raymond, after the making of the party wall contract, conveyed lot 10 through mesne conveyances to the defendant, the Loyal Mystic Legion. In 1900 the Loyal Mystic Legion erected a building on lot 10 and used the party wall. Charles L. Jones, one of the original parties to the agreement, claimed to be entitled to one-half of the money due, and assigned his claim to his son Arthur L. Jones, the plaintiff in this action, while Rose E. Shedd claimed that the whole amount was owing to her as grantee of Jones and Shedd. The court found for the plaintiff Arthur H. Jones, and the defendants prosecute error.

The principal question is whether the language of the contract must prevail, which provides that before using the wall the grantees of Raymond shall pay Charles L. Jones and Henry Shedd or their grantees one-half of the cost of it, or whether, notwithstanding this language, the money is due to the original parties. Plaintiffs in error contend, first, that the contract provides that the money should be paid to Jones and Shedd "or their grantees;" that this was the intention of the parties, which must control, and that there being no dispute but that Rose E. Shedd is the grantee it follows that she is entitled to the whole fund. Second, that the contract runs with the land, and Rose E. Shedd being the owner of the land the fund belongs to her. Third, that if the contract does

not run with the land the agreement is a personal agreement, and therefore, since the Loyal Mystic Legion did not agree with any one to pay this debt, and is neither party nor privy to the contract, there is no liability on its part to either party. Fourth, that there is no contractual relation between the plaintiffs and the defendant.

On the other hand defendant in error contends, first that money due on a party wall contract is a chose in action which is personalty, which does not pass by grant of the real estate but does pass by assignment. He further contends that the agreement or covenant by the owner of lot 10 to pay for the wall did not run with the land. Second, that, where a covenant is not of a nature that the law permits it to be attached to an estate by a covenant running with the land, it cannot be made such by an agreement, with the use of the words, heirs, executors, grantees or assigns.

In the consideration of this case we deem it advisable to examine the former decisions of this court which throw any light upon the question and to adopt a construction which is in harmony therewith.

In *Burr v. Lamaster*, 30 Neb. 688, the facts were that a contract was entered into between Lamaster and Baldwin, by which Baldwin was authorized to construct a party wall, one-half on a vacant lot owned by Lamaster, who covenanted for himself, his heirs and assigns, to pay Baldwin one-half the cost of the wall, whenever he should make use of the same. The court say:

"This agreement gave the Baldwins an interest in the nature of an easement in the Lamaster lot, and constituted an incumbrance. The obligation to pay a portion of the cost of the wall was not merely a personal covenant binding upon Lamaster, but was a burden which ran with the land and bound his grantees to pay for one-half of the wall if they used the same." It is further said: "There are cases holding that a party wall agreement like the one before us is merely personal, binding alone upon the parties to it, and does not attach to the

land, but the weight of the decisions in this country is to the effect that it attaches to and is a charge upon the land."

*Garmire v. Willy,* 36 Neb. 340, was an action brought by Willy against Garmire to recover one-half the costs of a party wall constructed by Willy under a written contract with Garmire's grantor. The contract provided that the covenants and agreements should extend to and be obligatory upon the heirs, administrators and assigns of the respective parties, and was acknowledged and recorded. Garmire purchased the vacant lot after the wall was built. There was a dispute as to whether Garmire had actual notice of the agreement before he purchased, but the court held that the recorded agreement was constructive notice, and held, further, that the agreement attached to the land and that Garmire was liable for the amount agreed to be paid.

In *Stehr v. Raben,* 33 Neb. 437, one Wallicks had made a party wall agreement with Henry Stehr whereby Stehr built a party wall, one-half thereof on a lot owned by Wallicks, under an agreement that when Wallicks, or his grantee, erected a building on his lot he should then pay for one-half of the party wall. Raben bought the lot from Wallicks with knowledge of the contract, taking title in the name of his wife, and executed his personal note to Stehr for the value of one-half of the party wall. The court found that both Raben and his wife were liable for the debt, and that the plaintiff was entitled to a lien upon the wall and the part of the lot on which it stood until the debt was paid. It is said by MAXWELL, Justice, writing the opinion:

"The right of the plaintiff to recover upon the note in controversy is not seriously questioned, and such a contract 'creates an equitable charge, easement, and servitude upon the lots built upon.'" Citing *Burr v. Lamaster, supra.*

In *Jordan v. Kraft,* 33 Neb. 844, the facts were that Jordan and Kraft made a party wall agreement by which

Jordan was to build a wall 100 feet long, and Kraft agreed to pay Jordan, within sixty days after completion, one-half of the cost of the north sixty feet thereof, also one-half of the cost of so much of the remainder as he should thereafter use, within thirty days after he uses the same. Before using the wall Kraft conveyed his lot, the deed providing that the grantee assumed the party wall agreement. The grantee used the wall, and this action was brought against Kraft to recover one-half of the cost of the south 40 feet. Kraft had apparently paid for the north 60 feet as the contract provided. The court held that Kraft was not liable, saying:

"The contract is not merely personal, binding only on the parties to it, but it attaches to and passed with the lot. Jamison (Kraft's grantee) had the same right to use the wall as Mr. Kraft, and no more. It was never contemplated by the parties that Kraft alone had the right to join to the wall, but rather that the owner of the lot, whoever he might be, could do so, on paying to the owner of the other lot the unpaid portion of the value of the party wall."

In a later case, *Cook v. Paul,* 4 Neb. (Unof.) 93, it is said that a more accurate statement of the law is as follows:

"The majority of the authorities maintain that these covenants are not of the nature of covenants running with the land, and that the grantees of the original parties cannot, by reason of their holding adjoining lots, take advantage of the benefit, or be subjected to the burden of the covenant to pay for one-half of the party wall, but that the right to recover is personal to the builder, and the obligation to pay, except in certain cases, rests upon the covenantor only; and an agreement of the parties that the covenant shall be binding upon their heirs or assigns, etc., or even that it shall run with the land, is ineffectual."

This doctrine is broader than the rule laid down by the prior decisions of this court. *Cook v. Paul, supra,* is one of the class of cases known in this state as "unofficial," and

as is said by HOLCOMB, C. J., in *Flint v. Chaloupka,* 72 Neb. 34, speaking of opinions of this character: "The court is not necessarily bound by anything said therein, nor to the propositions. of law enunciated on which the conclusions are predicated. It approves only the conclusions." We do not therefore consider it as in any way establishing the legal proposition contained in the opinion.

In most of these cases the question was as to the liability of the party using the wall, and the view taken by the court was that the contract so far as affects the obligation of the subsequent user of a party wall to pay for the same usually runs with the land. But in the instant case the question is different. It is to whom is the money payable. The obligation created by the contract is to pay a debt which does not become due and payable until the wall is used. The view taken by the courts of New York, Indiana, Illinois and Pennsylvania is that this is a personal obligation and passes by assignment, while Iowa, Massachusetts, Minnesota, Michigan and West Virginia hold that it is a convenant which runs with the land. In an extended note upon this subject to *Dunscomb v. Randolph,* 89 Am. St. Rep. 915, 941, the commentator concludes: "The more reasonable rule is that an agreement  *   *   *  whereby one is to build a party wall  *   *   *. and the other to pay for one-half of its construction when he uses the wall, creates cross-easements as to each owner, running with the land.  *   *   * The title to the whole wall may be regarded as appurtenant to the lot of the builder, and so passes by every conveyance of it until the severance of the one-half by the payment of the purchase money." In support of this doctrine he cites cases from Illinois and Pennsylvania. He examines each of the other doctrines held by the courts, citing cases, and concludes: "The decisions are in irreconcilable conflict, and almost equally divided. Even in the same state different results have been reached under facts almost similar, and prior rulings are distinguished in a manner beyond the comprehension of the ordinary per-

son." We refer to this note as giving a concise resume of the existing law upon the subject in other jurisdictions.

It will be observed that this court has heretofore adhered to the doctrine that such covenants run with the land, at least so far as the obligation of the user of the wall to pay for the same is concerned. We think, however, that in the disposition of this case it is unnecessary to pass upon this point. The contract expressly specifies that the money for the use of the wall should be paid to the parties of the first part or "their grantees." A grantee is "a person to whom a grant is made." Black, Law Dictionary. A grant is defined: "A generic term, applicable to the transfers of all classes of real property"; "A transfer by deed of that which could not be passed by livery." 3 Washburn, Real Property (6th ed.), sec. 1995; Williams, Real Property, 147, 195. The word grantee as used in this contract means therefore the person or persons to whom the real estate might be conveyed by deed.

Where the intention is to convey an interest in personalty, the transfer is usually termed an assignment, and persons who take are usually denominated in the instrument as "assigns." In most of the cases in which a similar question to that under consideration has been considered the contract has provided that the money to be paid for the use of the wall should be paid to the builder or "his assigns," and it has been held that the contract was personal in its nature, passed by an assignment of the claim as personalty, and did not pass by virtue of a conveyance of the real estate to the grantee thereof. See note to *Dunscomb v. Randolph,* 89 Am. St. Rep. 915, 941. We think such cases are easily distinguishable from the one at bar. In the contract under consideration the word "assigns" is nowhere used, but the word "grantees" is substituted. From a consideration of the language of the contract it seems clear to us that it was the intention of the parties that the provisions of the

contract should be binding upon all parties taking title to either of the lots by virtue of conveyances of the real estate, and that the intention was that the privileges, duties and liabilities given and imposed by the contract were conveyed to all persons obtaining title to either of the lots by grant from the original parties. In other words, it was their intention that whoever became the owner of either lot under them should stand in the shoes of the makers of the party wall agreement with respect to its provisions.

It is the duty of this court to carry out the intention of the parties to the contract, if it can be done without doing violence to established principles of law. We will not arbitrarily interfere with the liberty of contract. It has been said that "where a covenant is not of the nature that the law permits it to be attached to the estate as a covenant running with the land, it cannot be made such by agreement of the parties," but it is not necessary to say that the personal obligation to pay for the wall runs with the land, in order to carry into effect the provisions of the contract under consideration. It was as much within the power of Jones to agree that the money for the use of the wall should be paid to his grantees, as it was for Raymond to agree that his grantee should pay for the wall when he used it. By his written instrument, duly acknowledged and recorded so as to give constructive notice, Jones notified all persons interested that the grantee of lot 9 was entitled to be paid for the use of the wall. The agreement itself operated as an assignment of his personal claim to compensation to his grantee, whenever that person was designated by his deed of conveyance of the lot. As soon as Jones conveyed the title to the lot, the deed, together with the contract, and by virtue thereof, operated as an assignment of his right to be paid for the use of the wall to the person who was named therein as grantee. We are satisfied this was the intention of the parties at the time the contract was made, and that there is no legal principle which prevents us

from giving effect to this intention. Jones having parted with his interest in the subject matter of this suit had nothing to assign to his son the plaintiff herein. The record shows that Mrs. Shedd has already received payment for the use of the wall, hence no judgment is necessary in her behalf.

We recommend that the judgment of the district court be reversed and the action dismissed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the action dismissed.

REVERSED.