## J. W. ARNOLD v. R. P. CHAMBERLAIN ET AL.

### Decided November 18, 1896.

**1. Party Wall—Contract—Lien.**

A naked promise to share the cost and expense of a party wall is ordinarily a personal covenant which does not run with the land; but this rule does not prohibit adjoining owners from entering into a contract in writing by which a liability may be fixed for the cost and expense of the walls used by both proprietors and creating by contract a valid lien on the property to secure the amount so agreed on.

**2. Party Wall—Contract—Lien—Homestead—Covenants.**

Adjoining proprietors, F. and C., owners of lot five with a two story building, and H., owner of lot four with one story building, agreed on and recorded a contract

with reference to the party wall erected by F. and C. that if H. built a second story he should pay F. and C. or assigns half the cost of the wall and become half owner thereof, and till then should use wall for his first story only, not interfering with F. and C's second story windows, said money to be and remain a lien on H's lot subject to above contingencies. M. acquired lot four and sold it with general warranty to A., who made it his business homestead and nineteen years after the contract erected thereon a second story, closing the second story windows of lot five. On appeal by A. from a judgment foreclosing against him at suit of the owner of lot five, F. and C's vendee, the lien so reserved, and denying him recovery against M. on his warranty,—Held:

(1) The contract in this instance created a valid lien upon the property and the purchasers from H. acquired the property charged with this lien whenever they made use of the partition wall in the manner called for in the contract.

(2) The contract, for which in full see opinion, disclosed a consideration upon its face.

(3) Appellant's claim that the property in controversy was his homestead and therefore exempt from the operation of the lien was without merit. When he acquired the property and before it became his homestead it was charged with this lien, and the homestead claim was subordinate thereto.

(4) The trial court correctly held that M. was not liable to A. for a breach of his warranty. A. had alone elected to use and enjoy the partition wall and the liability and charge on the land resulted from his act.

(5) The judgment foreclosing the lien and denying recovery against the warrantor was correct.

APPEAL from the District Court of McLennan County. Tried below before Hon. L. W. GOODRICH.

*Richard I. Monroe*, for appellant.—An agreement to pay for part of a party wall is merely a personal covenant, and does not pass to a grantee and run with the land. Cole v. Hughes, 54 N. Y., 444; Bloch v. Isham, 28 Ind., 37; Curtiss v. White, 1 Clarke Ch. (N. Y.), 389; Coffin v. Talman, 8 N. Y., 465; 2 Washb. Real Property, 8; Harsha v. Reid, 45 N. Y., 415; Emerson v. Simpson, 82 Am. Dec., 168; Spencer's case, 1 Smith's Lead. Cases, 180; Nalle v. Paggi, 9 S. W. Rep., 205; 16 S. W. Rep., 933; Imp. Co. v. Dawson, 24 S. W. Rep., 576.

In no event can plaintiff recover, but if the suit can be maintained at all, Flint & Chamberlain, the grantors, are proper parties to sue. Same authorities cited above; also, Joy v. Boston, etc., Bank, 115 Mass, 60; Gibson v. Holden, 3 N. E. Rep., 282; Davids v. Harris, 9 Pa. St. 503; Todd v. Stokes, 10 Pa. St., 155, 219; Hart v. Lyon, 90 N. Y., 663.

The court erred in its judgment against the defendant, because said lot four in block six is his business and residence homestead, he being a married man and the head of a family, and since the time he purchased the lot from James I. Moore he and his family have used and occupied the same as a business and residence homestead, and if, by using said partition wall in building his one-story house two stories high, he voluntarily created a lien on his lot to the extent of one-half the cost of said partition wall, said lien is a nullity under the Constitution and the laws of the state of Texas, on his said homestead. Const., art. 16, secs. 50, 51.

Binding one's self to erect buildings a certain way, and only so high,

are incumbrances, and the covenant against incumbrances, in its general form, covers all such land burdens. Mackey v. Harmon, 34 Minn., 168; McGowen v. Myers, 60 Iowa, 256; Appeal of Edmund's Exr., 8 Atl. Rep., 31; 10 Am. & Eng. Ency. of Law, Chapter on Incumbrances, pp. 361-370.

Counsel for appellant also filed a motion for rehearing, based upon points covered by his original brief. The motion was overruled.

*J. H. Banton*, for appellee, Jas. I. Moore.—The court did not err in refusing to render judgment against this appellee, James I. Moore, because his warranty went with the land as it was and not against any further penalty that might be incurred by his vendees; and the property as he conveyed it was not incumbered.

FISHER, CHIEF JUSTICE.—*Statement of the Nature and Result of the Suit.*—On February 3, 1892, appellee R. P. Chamberlain sued E. L. Heriot, a citizen of California, and appellant J. W. Arnold, a citizen of McLennan County, Texas, on a certain contract attached to the original petition for the sum of $522, being one-half the cost of a partition wall, and $87.50, one-half the cost of building a cistern—$609.50 in all—with interest thereon from the —— day of ——, 1891, and asked for a foreclosure on lot number 4, in block number 6, in East Waco, in McLennan County, Texas, and the improvements thereon. Judgment was asked establishing plaintiff's (R. P. Chamberlain's) alleged debt against the defendant E. L. Heriot, and that the alleged mortgage lien of plaintiff on said property be foreclosed as a superior right to any claim set up or owned by appellant Arnold. Plaintiff R. P. Chamberlain sued on the contract attached to his original petition, which was executed on the 23rd day of October, 1872, by the firm of Flint & Chamberlain and defendant E. L. Heriot.

On the 20th day of February, 1893, appellant Arnold filed his first amended answer and plea in reconvention, and made his vendor, James I. Moore, a party to the suit. His pleadings consisted of a general demurrer and special exception, contending that by the terms of the contract sued on, Heriot bound himself, personally, upon a breach of its terms on his part, a lien could be enforced against said lot 4, in block 6, but that said contract does not contain a covenant which runs with the land in the possession of appellant, unless Heriot, before conveying the same, brought about a breach of said contract; and again, that the contract sued on shows on its face there was no consideration for its execution by Heriot, etc. Also, as to one-half the cost of the cistern and fixtures, limitation and stale demand, and specially, that Heriot sold lot 4, in block 6, to James I. Moore, and gave him a warranty deed to same, and on the 20th of November, 1888, James I. Moore conveyed, by warranty deed, said lot to appellant for the sum of $800, and he had no actual notice of the contract sued on; that the same was a personal contract of Heriot, and not a covenant which runs with the

land; that appellant, in 1891, being the owner of said lot and one-story house, did erect a second story on same; that at the time said partition wall was in a dilapidated condition and practically worthless, and did not keep out wind and rain, and would have tumbled down had it been left in the condition it was much longer, at the time appellant put on his second story; that, by building said second story, plaintiff's property adjoining was increased in value the sum of $750, was plead in reconvention against plaintiff's demand. Also, that at the time appellant built his second story, eighty-seven thousand of the best brick in Waco were not worth exceeding $650, and, if held liable at all, he ought to be bound for only $325. He further plead that he was a married man and head of a family, before and at the time he built his one-story house two stories high and at the time it was erected; before, and now, said premises were both his residence and business homestead, and occupied and used as such by himself and family; and further, that he was an innocent purchaser of the premises on which foreclosure is sought from James I. Moore, who, for $800, gave him a general warranty deed to same, and he prayed that said Moore be required to defend the suit, and if plaintiff obtained a judgment decreeing that his lot shall be sold to pay the plaintiff's claim, then that he have judgment for like amount over against said warrantor, Moore; that if his lot is held liable to pay plaintiff's debt against Heriot he have judgment for $750 against plaintiff, the sum sued for in reconvention, for the benefit of his said property by building his said house two stories high; and if appellant's lot is held liable at plaintiff's suit, it be only to the extent of what one-half of eighty-seven thousand brick would cost at the time appellant put the second story on his house.

Defendant Moore answered on the 3rd day of July, 1893, by general and special exceptions and special answer, in which he contended that Arnold did not show wherein he, Moore, had made or caused to be made, any breach of·his warranty, and that the covenant,˙made by Flint and Chamberlain and Heriot, was not such as runs with the land, and his warranty had not been violated, and that the contract sued on had been on record since the 24th day of October, 1872, and he had constructive notice of same at the time he purchased said lot from him in 1888; that Arnold built the second story on said building, and made the lien sued on effective after he became the owner of said lot, and he warned him not to build said second story, and his warranty went with the property in the condition it was when appellant bought it. He also adopted certain portions of appellant's amended answer.

The case was tried by the court, without a jury, on the 21st day of November, 1894, and judgment rendered in favor of plaintiff, declaring that Heriot was indebted to plaintiff in the sum of $525, with six per cent interest thereon from February 3, 1892, the date of filing of the plaintiff's petition, amounting to $616.35, and adjudging a recovery against him and foreclosing the mortgage against appellant's lot to satisfy the same, and in favor of Moore and against appellant for his costs.

Appellant perfected his appeal, assigned errors, and brings his case to this court for revision of said judgment.

*Statement of Material Facts Proved on the Trial of the Case.*—Plaintiff introduced in evidence the following agreement:

"The State of Texas, }
"County of McLennan. }   This article of agreement, made and entered into this 16th day of October, 1872, by and between Flint & Chamber-. lain of the first part, and E. L. Heriot of the second part, witnesseth, to-wit:

"Item 1st.   Flint and Chamberlain are the owners of the two story brick house built on lot (5), in block (6), in East Waco, in the city of Waco, and E. L. Heriot is the owner of the one story brick house built on lot (4), in block (6), adjoining the above, and all in the Railroad Addition to East Waco.   The partition wall was built entirely by the said Flint and Chamberlain, containing eighty-seven thousand brick, at a cost of one thousand and forty-four dollars, gold.

"Item 2nd.   Should the said Heriot, at any time, desire to build his said one story house up two stories high, he shall first pay to the said Flint and Chamberlain, their heirs or assigns, the full sum of five hundred and twenty-two dollars, gold, the one-half cost of said partition wall, and thereupon he shall become half owner of the same, and until said sum be paid, as aforesaid, by said Heriot, he shall have the right to enjoy said partition wall with said Flint and Chamberlain for a partition wall for the one story now built, but no higher; and the said Flint and Chamberlain shall have the right to put windows in the upper story of said partition wall and enjoy the light and air to the same without obstruction from the said E. L. Heriot, until he pays said money as aforesaid to the said Flint and Chamberlain.

"Item 3rd.   The said Flint and Chamberlain, and the said E. L. Heriot, have built in common a cistern, in the one-story house of the said Heriot, costing the sum of one hundred and seventy-five dollars, gold, and the said Flint and Chamberlain have the right to put a pipe through the wall into said cistern to draw water therefrom for the use of the occupants of their said two-story house, and may enter the said one-story house of the said E. L. Heriot at any time, to do whatever may be necessary to keep said pipe in repair as aforesaid.

"Item 4th.   At the end of one year from this date, or at any time thereafter, the said Flint and Chamberlain, or their heirs or assigns, may cease to enjoy and use the water from said cistern, and may demand of said E. L. Heriot, his heirs or assigns, the sum of eighty-seven and 50/100 dollars, gold, one-half the cost of said cistern; and the said E. L. Heriot agrees to pay the same upon such demand, and the said E. L. Heriot, by paying said sum of eighty-seven and 50/100 dollars, gold, at any time after one year, to the said. Flint and Chamberlain, their heirs or assigns, may cut them off from the further use of said.

cistern. The sums of money stipulated to be paid herein shall be and remain a lien on the lot and store-house of the said E. L. Heriot, subject to the contingencies of this agreement. Witness our hands at Waco, Texas, this 23 day of October, 1872.

　　　　"(Duplicates Signed)　　　　Flint and Chamberlain,
　　　　　　　　　　　　　　　　　　"E. L. Heriot."

Said agreement was properly acknowledged and filed for record 23rd October, 1872, and recorded in the mortgage records of McLennan County, Texas, on 24th day of October, 1872.

Plaintiff herein became the owner of the Flint and Chamberlain lot 5 in block 6, in East Waco, with the two-story house thereon, by transfers. James I. Moore, on the —— day of ———, 1888, became the owner of the lot owned by E. L. Heriot, being lot 4, in block 6, adjoining the Flint and Chamberlain lot, by warranty deed.

On 20th November, 1888, appellant herein, J. W. Arnold, purchased from James I. Moore, for the sum of $800, the said E. L. Heriot lot, being lot 4, in block 6, and received from him a general warranty deed to the same, which was duly filed and recorded.

It was agreed that plaintiff claimed nothing on account of the cost of the cistern mentioned in said contract.

T. D. Hays, plaintiff's witness and agent, testified that on the —— day of ———, 1891, he learned that J. W. Arnold was building his one story house, adjoining plaintiff's two story house, two stories high, and by so doing would close up the windows in plaintiff's two story brick house; that when he went over to see him he had the material on the ground and the workmen engaged in the work of repairing his one story building, and putting it up two stories high; that he did not notice that at the time defendant, Arnold, had done much work, and he notified him not to put another story on his house, as it would obstruct and close up the windows in plaintiff's house. Witness, at that time, did not know of the agreement above set out between Flint and Chamberlain and Heriot. That defendant, Arnold, told witness his house belonged to him and he intended to build it two stories high. Witness afterwards learned about the Flint and Chamberlain and Heriot agreement, and again went to see Arnold—and before he had finished putting another story on his house—and told him of said agreement and forbade him to do so and to use the partition wall. Defendant Arnold did build his house two stories high, and walled up the windows in the said wall of plaintiff's house, and used the partition wall, and inserted the ends of his joists in said wall; said one story house had never been built up two stories high until defendant Arnold built it up.

Defendant Arnold testified: I am a married man and was such at the time I purchased the Heriot lot from James I. Moore, having a wife and four young children. As soon as I purchased said lot I opened up a saloon and restaurant on it, and have continuously carried on said business, in said building, since, and it is my only place of business. Most

of the time my family and I have resided in said building, although I owned a small residence place in the city limits of Waco. After owning my one story house two or three years I concluded to put another story on it. I knew nothing about the Flint and Chamberlain and E. L. Heriot agreement, about the partition wall, when I bought the place from James I. Moore. I did build my house two stories high, using the said partition wall, and walled up the windows in the second story of plaintiff's building. James I. Moore told me nothing about the partition wall agreement at the time I bought the lot and one story building thereon from him. After getting all the material for the second story on the ground, and after the roof had been torn off my one story house, preparatory to putting on a second story, T. D. Hays came to see me and objected to my putting the second story on my building, because it would close the windows in plaintiff's house, for which he was agent. I told Mr. Hays I owned my house and thought I had the right to build my house as high as I pleased. Before the second story was finished he told me about the partition wall agreement. The alleged partition wall is twelve inches thick. Since I bought said lot it has been occupied and used, and is still occupied and used, as my place of business, said business being a restaurant and saloon business.

James I. Moore testified: When I sold the Heriot lot to defendant Arnold I knew nothing of the Flint and Chamberlain and E. L. Heriot partition wall agreement. I never learned of it until my attention was called to it by Maj. E. H. Graham, after Arnold commenced to build his house two stories high.

*Conclusions of Law.*—From these facts we conclude the judgment appealed from is correct.

The real question in the case is whether the contract between Heriot and Chamberlain created against the land in controversy a valid lien which may be enforced against a purchaser from Heriot. Ordinarily a naked promise to share the cost and expense of a party wall is a personal covenant, which does not run with the land (Nalle v. Paggi, 81 Texas, 201), but this rule does not prohibit adjoining owners from entering into a contract in writing by which a liability may be fixed for the cost and expense of the walls used by both proprietors and creating by contract a valid lien on the property to secure the amount so agreed upon. When the two owners enter into such a contract, by which one agrees to pay a certain amount—one-half the cost of the party wall— we can perceive no valid reason why this obligation may not be secured by a contract lien on the property, as may be done in any other case where the owner obligates himself to another to pay a certain amount. The contract in this instance creates a valid lien upon the property, and the purchasers from Heriot acquired the property charged with this lien whenever they made use of the partition wall in the manner called for in the contract. No personal judgment was rendered against Arnold or

Moore except in so far as was necessary to foreclose the lien on the property and make it liable for the debt contracted by Heriot.

In disposing of the second and fourth assignments of error it is only necessary to state that the contract upon its face discloses a consideration, and from the mutual promises therein contained the law will imply a consideration.

The claim of appellant that the property in controversy is his homestead, and therefore exempt from the operation of the lien in question, is without merit. When he acquired the property and before it became his homestead, it was charged with this lien. Consequently the homestead claim is subordinate to the lien and held subject thereto.

There was no error in the ruling of the court to the effect that Moore was not liable to appellant for a breach of his warranty. No use of the partition wall as provided by the contract was made by Heriot or Moore, but the benfits therefrom ripened into existence after Moore had parted with his title, and was at the instance of the appellant, Arnold. He alone elected to use and enjoy the partition wall, and if a liability and a charge upon the land result therefrom it was his act and conduct that brought it into existence.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.