McCORMICK v. STONEHEART. (No. 1174.)

(Court of Civil Appeals of Texas. Amarillo. May 9, 1917. Rehearing Denied June 6, 1917.)

1. PARTY WALLS ⊜⊐8(2) — CONTRACT — CONSTRUCTION.

A contract between adjoining owners, whereby the party desiring to erect a house was to erect a party wall one-half upon the property of each at his own expense, and whereby the other party, his heirs and assigns, were to pay one-half the cost when used by them, created easements in favor of the owner of each lot on the other's lot for the support of the wall; the cross-easement being created for the benefit of both lots.

[Ed. Note.—For other cases, see Party Walls, Cent. Dig. §§ 29, 30.]

2. PARTY WALLS ⊜⊐9(4)—AGREEMENT—USE—PAYMENT.

Under such agreement, the assignee of the party whose lot remained vacant, who used the wall as a party wall and enjoyed the benefit of the contract, was liable for his share of the cost of the party wall.

[Ed. Note.—For other cases, see Party Wills, Cent. Dig. § 48.]

3. PARTY WALLS ⊜⊐9(4)—AGREEMENT—LIABILITY OF ASSIGNEE.

Irrespective of the question of privity of estate or of running covenants, a subsequent grantee with notice of a party wall agreement who thereafter used the wall was liable to pay his part of the cost, the whole of which had been borne by the adjoining owner when he built it, on the theory that the builder was the absolute owner of the wall until the owner of the other lot paid for his part of its cost.

[Ed. Note.—For other cases, see Party Walls, Cent. Dig. § 48.]

4. PARTY WALLS ⊜⊐9(5)—CONTRACT—RIGHTS OF ASSIGNEE—BURDEN.

Where a party wall contract provided that it should bind the assigns of the respective parties, the benefits as well as the burdens ran with each lot, and the subsequent grantee of the owner who had built and paid the whole cost would be entitled to recover a proportional part of its cost on its use by the adjoining owner's grantee.

[Ed. Note.—For other cases, see Party Walls, Cent. Dig. § 49.]

**5. PARTY WALLS ⊕⟹9(4)—AGREEMENT—RIGHT TO COMPENSATION.**

Under a party wall agreement, whereby one owner built the party wall at his own cost, providing that the other owner or his assigns should pay a proportional share of the cost when they used it, and in view of the first owner's conveyance of all right in the part of the wall located on the adjoining lot, a recovery against the assignee of the other owner subsequently using the wall might be had on the theory of compensation.

[Ed. Note.—For other cases, see Party Walls, Cent. Dig. § 48.]

**6. LIMITATION OF ACTIONS ⊕⟹46(1) — AGREEMENT—RIGHT TO COMPENSATION.**

Under such agreement, the use of the wall referred to an actual use by building, and not to a sale of the adjoining lot, and hence limitation against an action for compensation ran only from the time of its actual use.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 240, 251, 253.]

**7. PARTY WALLS ⊕⟹8(2)—RIGHT TO COMPENSATION—LIEN.**

In an action for compensation under a party wall agreement, where the plaintiff pleaded a lien and sought a foreclosure, and where the amount to become due was in the nature of the purchase price of an undivided interest in the wall defendant's liability would create an equitable lien on his property.

[Ed. Note.—For other cases, see Party Walls, Cent. Dig. §§ 29, 30.]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by Lena M. Stoneheart against Robert McCormick. Judgment for plaintiff, and defendant appeals. Reformed and affirmed.

Gordon B. McGuire, of Lamesa, and W. N. Coombes, of Dallas, for appellant. Read, Lowrance & Bates, of Dallas, for appellee.

BOYCE, J. The parties to this suit are owners of adjoining lots in the city of Dallas. Barnett Gibbs, the remote grantor of appellee, had erected a partition wall across the division line of these lots in pursuance to a written contract with H. C. Penniman, the remote grantee of appellant, which contract was duly signed and acknowledged by the said respective parties and their wives, and placed of record, and is in substance as follows:

"Know all men by these presents, that we, Barnett Gibbs and wife, S. A. Gibbs, parties of the first part, and H. C. Penniman and wife Mary L. Penniman, parties of the second part, all of Dallas county, Texas, have this day, and do hereby enter into the following agreement, to-wit: Whereas the parties hereto own property adjoining on the south side of Elm street, in the city and county of Dallas, Texas, out of block No. 95; and whereas the west line of said Penniman and the east line of said Gibbs is a common line; * * * and, whereas, said parties of the first part are desirous of erecting a two-story brick business house upon their property, and it is desired that the eastern wall shall be a partition wall one-half to be erected upon the property of the parties of the first part and one-half to be erected upon the property of the parties of the second part: Now, therefore, it is hereby mutually agreed by and between the parties hereto that said eastern wall shall be a partition wall the same to be erected as that one-half of said wall shall be upon the property of the parties of the first part and one-half upon the property of the second part [here follow specifications as to dimensions, etc.]. Said party of the first part are to erect said wall at once, and to leave joist walls in the proper place for the resting of the joists on the side of the wall to be used by the parties of the second part. Said wall is to be erected by the parties of the first part at their cost. Said parties of the second part, their heirs or assigns, are to pay to the parties of the first part, when they use said wall, one-half of the value of said partition wall, to be estimated at the time the same is used by the parties of the second part, their heirs or assigns. Said estimate is to be made by two disinterested architects, one to be selected by each of the parties hereto, and if they cannot agree they are to select a third architect whose decision shall be final. This contract is to be binding upon the parties hereto, their heirs and assigns. Signed in duplicate this 28th day of Sept., 1889."

The appellant, McCormick, by regular chain of transfers, acquired the Penniman lot; the conveyances themselves do not appear to have referred to the party wall agreement, though it appeared in the abstract of title in appellant's possession. The appellee, by regular chain of transfer, by general warranty deeds, acquired the Barnett Gibbs lot, and after the death of Barnett Gibbs, his wife being independent executrix of the estate, conveyed to appellee the undivided one-half interest in the party wall on the Penniman lot. The Penniman lot remained vacant until April, 1914, at which time appellant erected a building thereon, cutting holes in the said wall to secure support for his joists, and fastening his building onto said wall, using the same as one of the walls of his building. He refused to submit the question of the value of the wall to arbitration, as provided by said contract, and attached his building to the same over appellee's protest, refusing to pay anything for such privilege.

Appellee, in the court below, recovered judgment against appellant for $600, which the court below found to be the value of one-half of the partition wall, and also the value of the use of said wall and the amount of damage sustained by appellee on account of the use thereof, without her consent.

[1] The contract referred to created easements in favor of the owner of each lot on the other's lot for support of the wall, and therefore imposed the burden of such easement on each lot. This cross-easement was created for the benefit of both lots, in that a saving of space, as well as the expense of erection of one wall, was thereby made.

[2] As the owner of the vacant lot was not, at that time, ready to improve his property and thereby make use of the wall, yet, realizing the benefit that the lot would receive by reason of the erection of a party wall on one of its lines, postponed the payment of his part of the expense of erecting such wall until such time as use thereof should be

made, but bound himself, his heirs or assigns, to pay said part of such expense at such time. When appellant, having constructive notice of the agreement by reason of its record, and some sort of actual notice, at least by reason of the fact that the wall stood across the division line of said property, acquired the property from the said owner, thus being an assign within the terms of the contract, and sought to use the wall and enjoy the benefit of the contract, there should be no difficulty in arriving at the conclusion that he ought to pay therefor. But when we come to examine the authorities on the subject, we find that this question has been involved in a bewildering maze of discussion of what constitutes "a covenant running with the land," "privity of estate," and "privity of contract," and that, while a majority of the courts have arrived at this conclusion, it has been reached by several different legal routes, and some of the courts have arrived at different conclusions. The decision in the case of Cole v. Hughes, 54 N. Y. 444, 14 Am. Rep. 611, seems to be chiefly responsible for this confusion. In that case Voorhees and Dean, being owners of adjacent lots, and Dean being desirous of building on his lot, entered into a written contract, which provided that Dean should, in building, erect one of the walls of his building over the division line of the two lots, and that it should constitute a party wall; and Voorhees covenanted "that whenever he, his heirs or assigns should use the wall" he or they would pay Dean or his assigns for such use. A remote vendee of Voorhees used the wall, and, being sued by the remote vendee of Dean, the court said, as to his liability:

"The next important question to be considered is whether the agreement of Voorhees to compensate Dean run with the Voorhees lot so as to bind his subsequent grantees. I do not think it did. At the time Voorhees made the covenant he received no interest in the land and granted none. He simply assented that Dean might build one-half of the wall upon his land, and then he agreed in a certain contingency, which might or might not happen, that he would compensate him. * * * There was therefore no privity of estate between Voorhees and Dean; there was simply privity of contract between them, and upon that relation alone could Dean enforce the covenant. * * * There is a wide difference between the transfer of the burden of a covenant running with the land and of the benefit of the covenant, or in other words, of the liability to fulfill the covenant and of the right to exact its fulfillment. The benefit will pass with the land to which it is incident, but the burden or liability will be confined to the original covenantor, unless the relation of privity of estate or tenure existed or is created between the covenantor and covenantee at the time when the covenant is made."

This conclusion evidently shocked the instinct for right as well as the common sense of other courts subsequently considering the question, and it would be an interesting study, if we had the time to devote to it, to follow the development of the law subsequent to this decision. The great majority of the courts have reached a different conclusion. Even in New York the decision has not been accepted without fine distinctions being drawn to evade its effect. Mott v. Oppenheimer, 135 N. Y. 312, 31 N. E. 1097, 17 L. R. A. 409; Morris v. Burr, 59 Misc. Rep. 259, 112 N. Y. Supp. 243. Some of the courts flatly denied the announcement that such a covenant, imposing the burden as well as the privilege, did not run with the land. This contrary view of the law is expressed by the Supreme Court of Massachusetts in the case of King v. Wight, 155 Mass. 444, 29 N. E. 644, in the following language:

"Where one party covenants with another in respect of land, and at the same time, with and as a part of making the covenant, neither parts with or receives any title or interest in the land, nor creates an easement, or a right in the nature of an easement for the benefit of the land, such a covenant is, at best, but a mere personal contract. * * * In the present case the agreement created an easement of use and support in favor of each lot owner and their successors in title in the half of the wall which stood on the other lot, and in the land under the same. Each lot of land became entitled, therefore, to the benefits and subject to the burdens arising from the covenants contained in the agreement, and relating to the erection and maintenance of the wall. They inhered in and belonged to it. The burdens and the benefits were inseparably connected, and the defendant could no more avoid paying to the successors in title of Mrs. Burt for one-half of the wall when he sought to use it than he could prevent the wall from standing when it had been built, assuming that it was built one-half on each lot."

The contract in that case did not expressly state that the covenants ran with the land, but did state that it should bind the heirs and assigns of each party; and the court further held that the contract created—

"mutual covenants running with each lot. The form of the instrument is plainly sufficient. It is under seal, binds the heirs and assigns of the respective parties, and is duly acknowledged and recorded. The fact that it does not purport in terms to create covenants running with the land is not of much moment. The effect of the instrument is to be gathered from it as a whole."

The great weight of the authorities have adopted this view of the law. Note to Cook v. Paul, 66 L. R. A. 673–711; Southworth v. Perring, 71 Kan. 755, 81 Pac. 481, 82 Pac. 785, 2 L. R. A. (N. S.) 87, 114 Am. St. Rep. 527; note to Dunscomb v. Randolph, 89 Am. St. Rep. 941; Rugg v. Lemley, 78 Ark. 65, 93 S. W. 570, 115 Am. St. Rep. 17, 8 Ann. Cas. 291; Ferguson v. Worrall, 125 Ky. 618, 101 S. W. 966, 9 L. R. A. (N. S.) 1261; Sandberg v. Rowland, 51 Wash. 7, 97 Pac. 1087, 130 Am. St. Rep. 1077; 30 Cyc. 792; Roche v. Ullman, 104 Ill. 11.

[3] Other courts have held that, irrespective of the question of privity of estate or running covenants, a subsequent grantee, with notice of the agreement, should be held liable to pay for the use of the wall on the theory that the builder of the wall is the absolute owner of it until the owner of the other lot pays for his part of the expense of

its erection, with an easement for support on the vacant lot, and the owner of the other lot cannot appropriate the use of the wall without paying for it. The Court of Appeals of this state, in the case of Mahoney & Evans v. Lapowski Bros., 3 Willson, Civ. Cas. Ct. of Apps. §§ 307, 308, applied this principle in a case where a subsequent vendee bought the vacant lot with notice of an oral contract as to a party wall, quoting with approval the dissenting opinion of one of the judges in a New York decision, in part as follows:

"The builder owns the wall absolutely until the other elects to use the same with a permanent right in him and his grantee to have one-half the wall stand on the lot of the other, not only while the latter retains the title, but after it has passed to an assignee with notice of the rights of the owner of the wall. If the owner of the land burdened with this easement elect to use the wall and pay half its value, he thereby becomes owner, not only of the one half upon his own land, but has an easement in the other half. Whether a covenant to pay for the wall when used runs with the land or not, in view of a court of law, a grantee of the covenantor having notice is bound in equity, and the benefit of the covenant inures to the grantee of the building, to whom the property wall passes as an incident to the grant, and the former cannot avail himself of this agreement without being equitably bound to pay him who is the owner of the wall at the time he appropriates it."

And Judge Wilson, who wrote the opinion, observed that:

"Although these views are those of only a single judge, they commend themselves to us as eminently reasonable and just."

The following cases announce similar holdings: Conner v. Joy, 150 S. W. 485; Sharp v. Cheatham, 88 Mo. 498, 57 Am. Rep. 433; Spaulding v. Grundy, 126 Ky. 510, 104 S. W. 293, 13 L. R. A. (N. S.) 149, 128 Am. St. Rep. 328, 15 Ann. Cas. 1105; Richardson v. Tobey, 121 Mass. 457, 23 Am. Rep. 283; 30 Cyc. 788, 792. It might not be so clear under these authorities as to whether the recovery would be determined by the terms of the contract or the value of the use of the wall appropriated, independent of the terms of the contract. That is not material here, however, as the court found that the value of the one half interest in the wall, the value of the use of the wall, and the damage sustained on account of the use of the wall without plaintiff's consent were each $600. So that, in either view of the decisions, the defendant would be liable unless we are to follow the case of Cole v. Hughes, supra, which we are not inclined to do.

[4] The question as to whether the grantee of the Barnett Gibbs lot, at the time of the use of the wall by the adjoining lot owner, or Barnett Gibbs himself, would be entitled to recover under the contract would, on the face of the matter, seem to present more difficulties, and there has been more conflict of decision in arriving at a conclusion of this question. The conclusion of the later authorities in which the determination of the question is controlled by the application of the doctrine of "running covenants" is that, when the contract provides that it shall bind the assigns of the respective parties, the benefits, as well as the burden, will run with each lot, and the subsequent grantee of the owner of the builder lot, at the time of the use of the wall, will be entitled to the recovery. Southworth v. Perring, 71 Kan. 755, 81 Pac. 481, 82 Pac. 785, 2 L. R. A. (N. S.) 87, 114 Am. St. Rep. 527; Loyal Mystic Legion v. Jones, 73 Neb. 342, 102 N. W. 621, as well as other authorities above cited.

[5] The facts of this case are more favorable to the support of the conclusion that the recovery should be had in behalf of the owner of the lot at the time of the use of the wall than in any of the cases cited; it is said that the determination of this question is largely one of intention, and the intention to convey the right to receive the compensation is made doubly manifest in this case by the conveyance to plaintiff subsequently made by the executrix of the Barney Gibbs estate of all right in that part of the wall located on the Penniman lot. If the recovery is not on the running covenant theory, but on the independent right to compensation on the use of the wall, there is no obstacle to plaintiff's right to recover. We conclude that under any theory of the law plaintiff is entitled to the recovery.

An exhaustive collection and discussion of the authorities will be found in the note to the case of Cook v. Paul, 66 L. R. A. 673, 711, supplemented at 2 L. R. A. (N. S.) 87. We would not have thought it necessary to have extended the opinion to this length but for the fact that while the cases of Nalle v. Paggi (Tex.) 9 S. W. 205, 1 L. R. A. 33, Id., 81 Tex. 201, 16 S. W. 932, 13 L. R. A. 50, Knowles v. Ott, 34 S. W. 295, and Arnold v. Chamberlain, 14 Tex. Civ. App. 634, 39 S. W. 201, are not in conflict in their holdings with the conclusions we have announced, it cannot be denied that the courts in at least some of those cases, proceeded on the theory that the case of Cole v. Hughes, supra, announced the law correctly. In the first case cited, Nalle and Paggi owned adjacent lots in the city of Austin. Paggi built a party wall on the division line, with a verbal understanding with Nalle that when he, Nalle, used the wall, he would do what was right about it. Nalle sold his lot to Shuwirth, who was informed of the agreement about the wall by Paggi at a time when he still owed $1,500 on the lot, and who built on it and used the wall. Paggi sued Nalle and Shuwirth to recover one-half the value of the wall. Recovery against Shuwirth was denied on the agreement by Nalle that he would do what was right about paying for a part of the wall, because, as the court said, the agreement was "a personal promise, nothing more. It created no lien upon the wall or lot, or any interest in it of any kind," and was not a "covenant affect-

ing the land." In reaching this conclusion the court quotes with approval from said case of Cole v. Hughes. The same case came up on a later appeal when recovery was allowed by Paggi against Nalle, and the later decision has no bearing on this case, except on another question referred to later. In the cases of Knowles v. Ott, 34 S. W. 295, and Arnold v. Chamberlain, 39 S. W. 201, the owners of the respective lots agreed that when the owner of the vacant lot should use the wall that the other owner might erect, under the agreement, he would pay one-half the value thereof. In the Knowles v. Ott Case, the contract undertook to bind the respective parties, their heirs and assigns, and agreed that the mutual covenants might run with said lots. The contract in both cases granted a lien on the property to secure the payment of any sums of money that might become due upon the use of the wall erected by one of the parties and used by the other. In each case the vacant lot was conveyed to others under warranty deeds, without reference to the party wall agreement, and the subsequent grantee used the wall, whereupon the owner of the builder lot sued the original party to the contract, making the subsequent grantee a party, and obtained judgment against the original maker of the contract with foreclosure of the lien on the lot, but without personal judgment against the subsequent grantee, who used the wall. In each case the subsequent grantee sought to recover of his vendor on a breach of the warranty in the respective deeds in the event the lien against the lot was enforced. In the case of Knowles v. Ott, recovery was allowed on the breach of warranty, and in the case of Arnold v. Chamberlain, such recovery was denied; the holdings on this issue being in apparent conflict. It will thus be seen that the questions decided by these cases are not identical with the question in this case, and there is not necessarily any conflict with those cases in the conclusions we have reached. The reasoning of the court in the Arnold v. Chamberlain Case is in accord, to a certain extent, with our own holding. While the court in that case states that ordinarily a naked promise to share the cost and expense of a party wall is a personal covenant which does not run with the land, it concludes that:

"When the two owners enter into such a contract by which one agrees to pay a certain amount, one-half the cost of the party wall, we can perceive no valid reason, why this obligation may not be secured by a contract lien on the property as may be done in any other case where the owner obligates himself to another to pay a certain amount."

We extend this holding somewhat further, and conclude that as the contract is made for the benefit of the lot and expressly binds the parties and their assigns, it is clear that it was the intention of the parties to charge the land and subsequent grantees with the pay-

ment of one-half of the expense of the wall when it should be used, throwing the burden of payment upon the party who reaps the benefit of the contract, and that, such intention being apparent, it is not necessary for the contract to grant an express lien on the land. In said case the court denied a recovery on the warranty because, as the court states, the benefits of the contract ripened into existence after the original owner of the lot had parted with his title, and at the instance of the party using the wall. "He alone elected to use and enjoy the partition wall, and if a liability and a charge upon the land result therefrom, it was his act and conduct that brought it into existence." We extend this holding a little further, and hold that as the contract expressly bound "the assign" to pay for one-half the wall when he used it, such assign, when he voluntarily accepted the benefits of the contract, should be personally bound for the payment of the price.

While the case of Cole v. Hughes, 54 N. Y. 445, 14 Am. Rep. 611, was quoted with approval by the Commission of Appeals in deciding the case of Nalle v. Paggi, 9 S. W. 205, 1 L. R. A. 33, that case has not been generally followed elsewhere; as we have shown by reference to the authorities, its application appears to us to lead neither to a just result, nor one that affects the intention of the parties to the party wall agreement; and, under the circumstances, we do not feel bound to follow it.

[6] The appellant pleaded the four-year statute of limitations to the suit, and assigns error to the action of the court in not sustaining this plea. The Pennimans conveyed the lot more than four years before the institution of the suit: and, while the lot remained vacant until 1914, the appellant contends under the authority of Nalle v. Paggi, 81 Tex. 201, 16 S. W. 932, 13 L. R. A. 50, that the sale of the lot constituted a use of the wall within the terms of the contract, and that limitations began to run at such time. We think it clear that the use of the wall referred to in the contract under consideration had reference to an actual use by building thereto, since the contract provided for leaving of joist walls on the side of the vacant lot to be used by the other party, and provided for payment at the time the wall was "used by the parties of the second part, their heirs or assigns." Berry v. Godfrey, 198 Mass. 228, 84 N. E. 304, 16 L. R. A. (N. S.) 435; 30 Cyc. 789.

[7] The appellee presents a cross-assignment to the action of the court in refusing to establish and enforce a lien against appellant's lot to secure the payment of the judgment, having pleaded that the facts, as stated, made said indebtedness a lien on said land, and having prayed for foreclosure of same. The contract being for the benefit of the property it seems that it ought to be charged with its performance; the amount to

become due was in the nature of the purchase price of an undivided interest in the wall. These facts we think are sufficient to create an equitable lien on the property to carry out the provision of the contract. It has been so decided in a number of cases. First National Bank v. Security Bank, 61 Minn. 25, 63 N. W. 264; Parsons v. Baltimore Building & Loan Association, 44 W. Va. 335, 29 S. E. 999, 67 Am. St. Rep. 769; Stehr v. Raben, 33 Neb. 437, 50 N. W. 327; Roche v. Ullman, 104 Ill. 11; Garmine v. Wily, 36 Neb. 340, 54 N. W. 562; Sharpe v. Cheatham, 88 Mo. 498, 57 Am. Rep. 433.

The judgment will be reformed so as to foreclose the lien on appellant's lot, and, thus reformed, will be affirmed.