**SETTEGAST et ux. v. SETTEGAST REALTY CO. et al.   (No. 8307.)**

(Court of Civil Appeals of Texas. Galveston. May 19, 1922. Rehearing Denied June 1, 1922. Writ of Error Refused June 14, 1922.)

**1. Easements ⬧⬥12(1)—Contract not to build wall within 4 feet from boundary or over open space held supported by sufficient consideration.**

A contract not to build wall or other obstruction closer than four feet to the boundary line of certain lots, or over or above an open space of eight feet which by a prior verbal agreement with an adjoining landowner was to be left between their respective buildings, or in any manner to obstruct or darken such space except as expressly provided, in consideration of the adjoining landowner having theretofore constructed its building four feet from the line in conformity to its verbal agreement, and its promise to keep such space open and unobstructed in the future, was supported by ample consideration.

**2. Contracts ⬧⬥56 — Mutual simultaneous promises constitute valuable consideration.**

Mutual simultaneous promises constitute a valuable consideration.

**3. Easements ⬧⬥61(2)—Restraining increase in height of walls along alley in violation of contract properly granted.**

The court did not abuse its discretion under Vernon's Sayles' Ann. Civ. St. 1914, art. 4643, § 3, in enjoining increase in the height of walls along an alley which was thereby obstructed and darkened, in violation of a contract with the owner of an adjacent hotel, who could not be adequately compensated in a suit for damages, not to build walls within 4 feet of the alley or over or above it, if the existing walls were torn down or destroyed, though such contract also provided that the existing walls need not be removed; such provision being no impediment to the immediate effectiveness of the other provisions.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Suit by the Settegast Realty Company against the Foley Bros. Dry Goods Company, in which J. J. Settegast and wife were made defendants. From a judgment granting an injunction pending suit, defendants J. J. Settegast and wife appeal. Affirmed.

J. M. Gibson, of Houston, for appellants.
Baker, Botts, Parker & Garwood, of Houston, for appellees.

LANE, J. Block 45, south side of Buffalo bayou, in the city of Houston, Tex., is bounded on the north by Preston avenue, on the east by Fannin street, on the south by Prairie avenue, and on the west by Main street. In the year 1912 J. J. Settegast and wife were, as they are now, the owners of lots 11 and 12 in said block 45, and the Settegast Realty Company, a corporation, hereinafter called the Realty Company, was, as it is now, the owner of lots 2, 3, and part of 4 in said block 45. Lots 11 and 12 owned by Settegast and wife are inner lots fronting west on Main street, and extend east to about the center of the block, while the lots owned by the Realty Company front east on Fannin street and extend west to the east boundary line of the lots of Settegast and wife; the east line of the lots of Settegast and wife and the west line of the lots of the Realty Company being a common boundary line of the two respective properties. In 1912 there were buildings upon lots 11 and 12 belonging to Settegast and wife, the east walls of which were built of brick, and stood on said common boundary line. One of the walls of the Settegast buildings was at that time about 49 feet in height, one about 33 feet in height, and the remainder about 15 feet in height. In said year 1912 the Realty Company, contemplating the erection of a brick building three stories in height, to be used principally as a hotel or rooming house, entered into a verbal contract and agreement with J. J. Settegast and wife, whereby the things and conditions recited in a contract thereafter reduced to writing and executed by the parties on the 2d day of April, 1917, were agreed to. The material parts of said written contract, that is, those relevant to the matters involved in this suit, are as follows:

"The parties hereto desire to contribute equally to the space for light and air, for the benefit of their respective properties, as hereinafter expressed."

Again:

"It is understood that the parties hereto arranged and agreed upon this contract in 1912, before the construction by Settegast Realty Company of its present building, situated on lots 2, 3, and part of 4, and that in the construction of said building said Settegast Realty Company conformed to the agreement between the parties hereto as herein expressed, and the said Settegast Realty Company did not build and shall not build on said strip of 4 feet wide by 139 feet long, and shall keep the same unobstructed except for the brick fence and fire escape hereinafter specified."

Again:

"It is agreed that the said combined strips of land, aggregating 8 feet wide and 139 feet long, shall be left open and vacant permanently, as an easement for light and air; * * * that the said strip 8 feet wide and 139 feet long shall be kept open as private alleyway for light and air, and shall remain wholly unobstructed except for the brick fence and fire escape herein mentioned."

Again:

"That said Settegast Realty Company shall have a permanent easement in the 4 feet by

---

⬧⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

139 feet contributed by the said J. J. Settegast and wife, Mrs. K. M. R. Settegast, for the benefit of itself, its successors and assigns, as an easement appurtenant to the parts of lots 2, 3 and 4, which adjoin the same * * * and the same shall be an easement appurtenant to the parts of lots 11 and 12 which adjoin the same; that neither party shall have any right to make any permanent use of the said strip 8 feet wide by 139 feet long, except as herein specified, nor any temporary use thereof which will interfere with the enjoyment of the property of the other."

Again:

"And the parties may use the surface of the land on their respective sides of the fence, but shall not have any building or other structure thereon and nothing shall be stored or stacked except temporarily. * * * Neither party shall have the right to build over or above the alleyway nor to in anywise obstruct or darken the same except as herein expressly provided for. The rights and duties of the parties to the private alleyway shall be mutual and reciprocal."

Again:

"It is also understood that said J. J. Settegast and wife, Mrs. K. M. R. Settegast, now have buildings which were constructed many years ago on the aforesaid 4 feet wide by 139 feet long of lots 11 and 12, and they are not required to remove the same nor to in any wise interfere with the present buildings, but when the present building or the parts thereof on the east lines of said lots 11 and 12 shall be torn down or destroyed or removed, or new buildings constructed then, and in such event, said J. J. Settegast and wife, Mrs. K. M. R. Settegast, shall leave open, vacant and unobstructed, except for the brick fence and fire escapes hereinafter mentioned, the said 4 feet wide by 139 feet long."

The written agreement was filed for record and recorded in the deed records of Harris county, Tex., in which county said lots were situated, on the 5th day of April, 1917.

Some time after the verbal agreement of 1912 was entered into, and before the same was reduced to writing and executed by the parties, the Realty Company erected upon its said lots the brick building which it had in contemplation when the verbal agreement was had. In erecting said hotel building the Realty Company did so in conformity to and in performance of its part of the verbal agreement of 1912 and set the west wall of its building 4 feet east of the west line of its lots, thus leaving an open space between its building and the east walls of the buildings of Settegast and wife wholly upon its lots.

Foley Bros. Dry Goods Company, a corporation, hereinafter called Foley Bros. Company, was at the time of the institution of the present suit lessee of the lots and buildings situated thereon belonging to Settegast and wife, and were in possession thereof under a lease which would by its terms expire with the last day of June, 1922. It had, however, by the terms of a lease contract entered into between it and Settegast and wife, on the 28th day of December, 1920, leased said properties for a term of 99 years from the 1st day of July, 1922. This latter lease contract will not begin until the 1st of July, 1922, and therefore Foley Bros. Company was, at the time of filing this suit, and are still, in possession of the properties under the first lease, which, as before said, does not expire until July 1, 1922.

By the terms of the contract of December 28, 1920, Foley Bros. Company was authorized to make such alterations and changes as it may desire in the improvements now on said lots 11 and 12, and to repair, remodel, and reconstruct said improvements and to erect such new improvements as it may desire. Assuming that it had the right to do so by virtue of the lease contract last mentioned, the Foley Bros. Company did, on or about the 8th day of March, 1922, begin to build upon the east walls of the buildings upon said lots 11 and 12, with the declared purpose to bring them to a uniform height of 50 feet.

On said 8th day of March, 1922, the Realty Company filed the present suit. After alleging the ownership of the several properties, it alleged the contract entered into between it and Settegast and wife, parts of which are copied above, and the threat of Foley Bros. Company to increase the height of the walls of the Settegast buildings. It also alleged that, if Foley Bros. Company were permitted to so increase said walls, the light and air accessible to its hotel building would be greatly lessened to its damage, etc. Its prayer was for an injunction restraining Foley Bros. Company from erecting new buildings or any other structure on the dividing line between the properties of the respective parties to the contract entered into between Settegast and wife and it on the 2d day of April, 1917, and from erecting any other structure thereon of any character without making provision for the easement strips of 4 feet described in said contract.

Foley Bros. Company answered and alleged its 99-year lease from Settegast and wife, and asserted its right to erect the contemplated increase of the east walls of the Settegast buildings by virtue of said lease contract. It made Settegast and wife parties to the suit, and prayed that, in the event the injunction prayed for by the Realty Company was granted, it have judgment against Settegast and wife for such damages as it might suffer by reason of such injunction.

Settegast and wife entered their appearance, and answered that, at the time the written contract between them and the Realty Company was executed, the Realty Company had already constructed its hotel building on their lots, and had voluntarily left 4 feet between said hotel and the east line of

their buildings so as to give ventilation and air to the occupants of the hotel. They averred that there was nothing of value passed between them and the Realty Company as a consideration of said written contract; that it is apparent upon the face of said contract that it was to have no present effect, and was merely to evidence a mutual executory understanding without any legal consideration or obligation that could be enforced in law between the parties thereto; that said contract does not vest in the Realty Company any such easement as would prevent them or their tenant from erecting the proposed increase in the walls of its buildings, and that the written contract is wholly void for lack of consideration. They deny that the increase in the height of its walls would be in violation of any of the terms of said contract, and that such increase in the height of said walls would in any appreciable manner affect the value, use, or convenience of the hotel of the Realty Company.

Passing only upon the prayer for injunction, after hearing the evidence relative thereto, the court rendered judgment enjoining Foley Bros. Company and Settegast from making any material or substantial increase in the height of the walls now located on the boundary line between the properties of Settegast and wife and the Realty Company pending suit. From the judgment so entered J. J. Settegast and wife alone have appealed.

The contentions made by appellants for a reversal of the judgment are substantially: (1) That the easement contract of April 2, 1917, is unilateral and unenforceable, in that no consideration passed from the Realty Company to Settegast and wife for the execution of the same; (2) that the contract "in so far as Settegast and wife are concerned, was based on the happening of a future event—that is, the destruction of the walls belonging to them then standing on the division line between the properties of the respective parties—and that, as that event has never occurred, the contract fails for want of mutuality and consideration"; and (3) that, regardless of the question as to whether the contract was supported by a consideration, the injunction was improperly granted, in that the contract of easement was not in effect, and would not be until the present walls on the property of Settegast and wife were either removed or destroyed.

[1] The first contention of appellant cannot be sustained. There was ample consideration passing from the Realty Company to Settegast and wife to support the easement contract. It is shown that the parties had orally agreed that an open space of 8 feet should be left between their respective buildings, one-half thereof to be contributed by each party; that in conformity to said agreement the Realty Company did in good faith thereafter construct its building 4 feet east from its west line; that on the 2d day of April, 1917, the oral agreement was reduced to writing and was executed by both parties, and therein and thereby they renewed and finally consummated said oral agreement. As a consideration for the making of the contract, Settegast and wife had not only received from the Realty Company the use of the 4-foot space left by it for the period of 4 or 5 years prior to the execution of the written contract, but by said contract the Realty Company obligated and bound itself to keep said space open and unobstructed. This obligation assumed by the Realty Company was in consideration of the promise on the part of Settegast and wife that, in the event the walls then standing on their east boundary line should be torn down or destroyed, they (Settegast and wife) would not again build any wall or other obstruction, except a fence 6 feet in height, closer to its east line than 4 feet, and that they would not after the date of the execution of said contract build over or above the open space of 8 feet, the subject-matter of the contract, nor in any manner or in any wise obstruct or darken the same except as expressly provided for in the contract. The increase in the height of the walls of Settegast and wife was not expressly or otherwise agreed upon by the contract.

It was also expressly agreed by the contract that the rights and duties of the parties to the open strip or space should be mutual and reciprocal.

[2] It is well settled that mutual simultaneous promises constitute a valuable consideration. Arnold v. Chamberlain, 14 Tex. Civ. App. 634, 39 S. W. 201, writ of error refused by the Supreme Court in 93 Tex. 678, 39 S. W. 201.

Independent of the obligations assumed by the respective parties by their oral agreement made in 1912, and the benefits received therefrom by Settegast and wife, the written contract upon its face discloses a consideration, and from the mutual promises therein contained the law will imply a consideration.

[3] Neither can the second or third contention of appellant be sustained. The provision in the easement contract to the effect that appellants are not required to remove the existing walls of their buildings is no impediment to the immediate taking effect of the contract as to the other provisions thereof. The provisions of the contract, to wit, "Neither party shall have the right to build over or above the alleyway, nor to in anywise obstruct or darken the same," went into immediate force and effect upon the execution of the contract. It is shown that, if appellants were permitted to increase the east walls of their buildings to a uniform height of 50 feet, as proposed by them, the alleyway would be to some extent obstructed and to a considerable extent darkened. It is also shown that the increased height of

said walls would seriously interfere with the enjoyment of the hotel building by the Realty Company, its owner, and that said Realty Company would suffer damage which could not be adequately compensated for by a resort to a suit for damages.

That the court did not abuse its discretion in granting the injunction pending suit we have no doubt. Vernon's Sayles' Civil Statutes 1914, art. 4643, § 3; Sumner v. Crawford, 91 Tex. 129, 41 S. W. 995; Salisbury v. Andrews, 128 Mass. 336; Chase v. Walker, 167 Mass. 293, 45 N. E. 916; Keating v. Springer, 146 Ill. 481, 34 N. E. 805, 22 L. R. A. 544, 37 Am. St. Rep. 156; Murphy v. Harker, 115 Ga. 77, 41 S. E. 585; Hennen v. Deveny, 71 W. Va. 629, 77 S. E. 142, L. R. A. 1917A, 524.

The judgment of the trial court enjoining appellants from proceeding to increase the height of its walls pending the final determination of the present suit is, we think, amply sustained by the law and the facts proven. The judgment is therefore affirmed.

Affirmed.