**JONES et al. v. MONROE.   (No. 2930.)**

(Court of Civil Appeals of Texas. Texarkana. May 17, 1924. Rehearing Denied May 22, 1924.)

1. **Party walls ⬅9(5)—Agreement as to payment for use of wall held not to run with land.**

Where T. built party wall under agreement with adjoining owner M. that, when M. or assigns used the wall, M. should pay T. half the cost of the wall, and T. later sold her lot, T. alone was entitled to such payment when M. used the wall; the right to enforce M.'s undertaking not running with the land, but being personal to T.

2. **Party walls ⬅6—Builder entitled to half cost of entire wall partly used by adjoining owner.**

Where T. built wall under agreement with adjoining owner M. that, when M. or assigns used the wall, M. should pay T. half the cost of the wall, and that wall, after such payment, "then * * * shall belong to said M. and T., their heirs or assigns," held that, on M.'s use of the wall, T. was entitled to half the cost of the entire wall, and not merely to half the cost of the part thereof used by M.

Appeal from District Court, Hunt County; Geo. B. Hall, Judge.

Suit by C. B. Jones and another against W. T. Monroe and Mrs. N. B. Teague. From the judgment rendered, plaintiffs' and defendant Mrs. Teague appeal. Reformed and affirmed.

Clark & Sweeton and Looney & Bowman, all of Greenville, for appellants.
Neyland & Neyland, of Greenville, for appellee.

WILLSON, C. J. Mrs. N. B. Teague and W. T. Monroe, owning adjoining lots, entered into a written contract containing recitals and provisions as follows:

"Whereas, the said Mrs. N. B. Teague is desirous of erecting a two-story brick building on her lot situated on the south side of West Lee street in block 202, according to the 1913 map of the city of Greenville, Texas, and
"Whereas, the said W. T. Monroe is the owner of a lot adjoining the Teague lot on the west and for the use and benefit to be hereafter derived from the use of the partition wall between said lots the said Monroe agrees with the said Teague that she shall build the west wall of said building partly on the Monroe lot, that is to say that the west wall of the Teague building be a thirteen-inch wall and shall occupy six and one-half inches on the Teague lot and six and one-half inches on the Monroe lot, and for the uses and benefits to be derived as hereinbefore specified the said Monroe and Teague agree that said partition wall shall be the property of the said Mrs. N. B. Teague and the said W. T. Monroe and Monroe and his assigns shall have the privilege of adjoining on to said wall at any time, he or

they may be ready to erect a building and at the same time that he or they erect said building, that he agrees to pay Mrs. N. B. Teague a sum of money to be agreed upon by two reliable contractors, George Lindsey and John Graham, architect and builder and after Monroe shall have paid for one-half the cost of said wall then it shall belong to said Monroe & Teague their heirs or assigns."

Mrs. Teague afterwards constructed a two-story brick building on her lot and placed the west wall thereof on the line between her lot and Monroe's, as Monroe had agreed she might. The wall cost $924. Later Mrs. Teague conveyed her lot to one Thompson by a deed in which no mention was made of the wall or of the contract with reference to same between her and Monroe. Still later appellants C. B. Jones and J. W. Birdsong became the owners of the lot by mesne conveyances from Mrs. Teague's grantee. Afterwards Monroe constructed a one-story building on his lot, using the west wall of the building constructed by Mrs. Teague as the east wall of his building. The part of the wall of the Teague building so used by Monroe cost $528. This suit was by Jones and Birdsong, as the owners of the Teague lot, against Monroe to recover $570, which they alleged to be one-half of the cost of the wall constructed by Mrs. Teague as stated. They also made Mrs. Teague a defendant, alleging that she was "asserting some kind or character of claim" to the amount due from Monroe. In her answer to the suit Mrs. Teague alleged that Monroe's liability was to her and not to Jones and Birdsong, and prayed that she be awarded a recovery of the sum due by him under the contract which, she also alleged, was $570. In his answer Monroe denied that he agreed to pay Mrs. Teague "one-half of the cost of the wall," and alleged that his undertaking was to pay only the "value or cost (quoting) of so much of the wall as was used by him," such value and cost to be estimated by George Lindsey and John Graham, architects, and then alleged that—

"He stands ready to pay the person entitled to same the value of the use and benefit derived by him from joining on the said wall, which, he alleges, is a sum equal to the cost of one-half of that portion of the wall which this defendant has used in the building and construction of the building so constructed by him."

The trial court concluded that Monroe's liability was to Mrs. Teague and not to Jones and Birdsong, and that it was for one-half of the cost of the part he used and not for one-half of the cost of the entire wall constructed by Mrs. Teague on the boundary line of the lots. The court having rendered judgment accordingly, Jones and Birdsong prosecuted on appeal, and insist here that Monroe's liability was to them and that it was for one-half of the value of the entire wall. Mrs. Teague also prosecuted an appeal and insists here that the judgment should have been in her favor against Monroe for one-half of the cost of the entire wall instead of for one-half of the cost of the part thereof used by him.

[1] The contention of Jones and Birdsong is predicated on the view that the right to enforce the undertaking of Monroe to pay one-half of the cost of the wall when he or his assigns used it was one that "ran with the land" and belonged to them as the owners of the Teague lot at the time Monroe began to use the wall. Mrs. Teague's contention, on the other hand, is on the view that the undertaking of Monroe was personal to her and that she alone had a right to enforce it.

We have not thought it necessary to review the many decisions by courts of other states than this one cited in support of the respective contentions; for, as we understand decisions by the courts in this state, they are that contracts like the one in question here should be construed to be personal to the parties who make them. Nalle v. Paggi (Tex. Sup.) 9 S. W. 205, 1 L. R. A. 33; Id., 81 Tex. 201, 16 S. W. 932, 26 Am. St. Rep. 811; Knowles v. Ott (Tex. Civ. App.) 34 S. W. 295; Arnold v. Chamberlain, 14 Tex. Civ. App. 634, 39 S. W. 201.

In the case first cited Nalle agreed (in effect), when he used it, to pay one-half the cost of a wall built by Paggi on the line between lots they respectively owned. Afterwards Nalle sold his lot to Schuwirth, who built a house on it, using the Paggi wall. In a suit brought by him for the purpose, Paggi recovered judgment against both Nalle and Schuwirth for one-half the cost of the wall. In disposing of the appeal prosecuted by Nalle and Schuwirth, the court said:

"The parol understanding between Paggi and Nalle that the latter would do right about paying for his part of the wall upon a certain contingency was a simple contract—a personal promise, nothing more. It created no lien upon the wall or the lot, or any interest in it of any kind. To hold that it was a covenant affecting the land, and running with it, would be to make a contract for the parties that they never made and never intended to make. The utmost that can be said is that Nalle agreed to pay money for the building of that part of the wall standing upon his lot when he built to it—a mere promise, no more binding upon his grantee or running with the land as a charge upon it than if he had made the promise to a stranger or builder."

We see no difference between the Nalle-Paggi Case and this one, except that there the contract was a verbal one, while here it was evidenced by a written instrument which (the execution thereof having been duly acknowledged by the parties) was spread upon the deed records of Hunt county. It will be noted that Monroe's undertaking in the

contract in question here was that he (not he or his assigns) would pay to Mrs. Teague (not to her or her assigns) a part of the cost of the wall when he or his assigns used it.

In the face of the plain provisions referred to, and in the absence, as is the case, of anything whatever in the contract indicating that the parties intended their respective undertakings to be otherwise than personal to themselves, we do not think—if respect is paid to the ruling in the Nalle-Paggi Case—any other conclusion than that the contract was a personal one is warranted.

Jones and Birdsong seem to be of the opinion that the Nalle-Paggi Case was overruled, in effect, by McCormick v. Stoneheart (Tex. Civ. App.) 195 S. W. 883, decided by the Amarillo court, in which the Supreme Court refused to grant a writ of error.

It is true that the holding in the Nalle-Paggi Case was criticized as incorrect in the McCormick-Stoneheart Case, and that the court declared that they did not "feel bound to follow it." But as we understand the facts of the McCormick-Stoneheart Case, the court was not called upon to determine the question made in the Nalle-Paggi Case, and all it said about that question was obiter.

Mrs. Stoneheart, the plaintiff in the McCormick-Stoneheart Case, was the grantee of grantees of Gibbs, who built the wall on the boundary line between a lot he owned and one owned by McCormick's grantors, who had agreed to pay one-half the value of the wall when they or their heirs or assigns used it. It appeared that Mrs. Stoneheart was not only the owner of the Gibbs lot by mesne conveyances from Gibbs, but that Gibbs' executrix after his death had conveyed to her "the undivided one-half interest" his estate owned "in the party wall on the Penniman (McCormick) lot." The record being as stated, it seems to us that a question as to the right to maintain the suit being in Mrs. Stoneheart instead of in the Gibbs estate was not presented; for, as was said by Judge Boyce, who wrote the opinion in the case, Mrs. Stoneheart was entitled to the recovery she obtained "under any theory of the law."

[2] We think the judgment should have been in Mrs. Teague's favor against Monroe, as it was, but that it should have been for one-half the cost of the entire wall, to wit, $462, instead of for one-half the cost ($264) of the part thereof used by Monroe. The thing Monroe agreed to do when he or his assigns constructed a building on his lot was to pay Mrs. Teague a sum of money equal to one-half the cost of the wall as determined by architects named. In his brief Monroe says the architects agreed that the sum he owed was $264, but there is no statement of facts with the record, and the trial court found that the cost of one-half the wall was $462. So far as we can know to the contrary, the finding was based on and warranted by testimony of the architects named.

The judgment will be so reformed as to award Mrs. Teague a recovery against Monroe of $462 instead of $264, and as so reformed it will be affirmed. One-half the costs of the appeal will be taxed against Jones and Birdsong, and the other one-half against Monroe.

⬅︎For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes